[Filed March 29, 1892.]

## THOMAS STEWART *v.* MARKS ALTSTOCK.

RAILROAD LANDS — GRANT IN PRÆSENTI — ACT OF CONGRESS.—The grant of lands to the Northern Pacific Railroad Company, by the third section of the act of congress of July 2, 1864, incorporating that company, is a grant *in præsenti,* in the nature of a float, until the route was determined according to the requirements of the act; and after that, definite in its nature, attaching to specific sections capable of identification, except as to sections which were expressly reserved.

PUBLIC LANDS — PRIVATE ENTRY.— Public lands, within the meaning of the acts of congress, are such as are subject to sale or other disposal under general laws, and do not include those previously granted or in process of private entry by pre-emption, homestead, or the like.

VOID PATENT — REMEDY AT LAW — PLEADING.— A patent issued for lands not granted, or that were excepted out of the grant under which the patent issued, passes no title, is void, and may be attacked in an action at law by a defendant against whom it is used, if he be a party deraigning from the general government a valid paramount title to land included in the patent and the subject of the action; but the pleading of such a party must affirmatively allege the ultimate facts showing him to be in a position to make such attack.

Multnomah county: L. B. STEARNS, Judge.

Defendant appeals. Reversed.

This litigation was originally commenced by the present defendant against the plaintiff herein, and was in the form of an action of ejectment to recover all of lot No. 37, and the south four-fifths of lot No. 13, in the city of Eastwood, county of Multnomah, state of Oregon. The defendant in that action filed his answer, substantially admitting that he was without a defense at law, but alleged that he was entitled to the interposition of a court of equity to make good his defense; and thereupon, as plaintiff, filed his cross-bill, by which he alleged in substance that the real property sought to be recovered in the original action is a part of the northwest quarter of section 5, in township 1 south, range 3 east, Willamette meridian; that said real property was covered and included in the grant of land made to the Northern Pacific Railroad Company, by act of

congress of July 2, 1864, entitled, "An act granting lands to aid in the construction of a railroad and telegraph lines from Lake Superior to Puget Sound on the Pacific coast by the northern route," and the acts and joint resolutions of congress supplementary thereto, and that by virtue of said grant the title to said land was conveyed to the Northern Pacific Railroad Company; that the congress of the United States, by act of July 25, 1866, entitled, "An act granting land to aid in the construction of a railroad and telegraph lines from the Central Pacific Railroad in California to Portland, Oregon," and an act amendatory thereof, July 25, 1868, granted certain lands to the Oregon Central Railroad Company, and that the Oregon & California Railroad Company, as successor to the said Oregon Central Railroad Company, erroneously, falsely, fraudulently, and illegally claimed the land mentioned in said complaint, and first above described, as being covered by said last-named grant and belonging to it, the said Oregon & California Railroad Company, by reason and virtue of said grant; that the said Oregon & California Railroad Company, erroneously, falsely, and fraudulently selected, listed, and certified the said land first above described as belonging to and included in its said grant; that the official agents of the United States, whose duty it was to carry into effect said grant, and execute conveyances to the lands conveyed thereby, when earned, relying upon and believing such false and fraudulent representations, caused to be executed and delivered a patent and conveyance of said parcel of land first above described to the Oregon & California Railroad Company on the seventh day of May, 1871, which conveyance was first recorded in the records of deeds of said county and state on the third day of February, 1891; that the only claim of the defendant herein, Marks Altstock, to said real estate is by virtue of claiming by mesne conveyances from and under the said Oregon & California Railroad Company; that the said real property never was included in or cov-

ered by the said grant of July 25, 1866, under which the said Oregon & California Railroad Company and its successors claim, and that neither the said company nor its successors, nor any of them, ever had any title thereto; that said conveyance from the United States to the Oregon & California Railroad Company was irregularly, erroneously, and illegally issued and made, and was issued and made by mistake, in the belief and with the intention of conveying only such land as was included in the last-named grant, and that such conveyance was and is void; that the line of definite location of said Northern Pacific Railroad was duly fixed opposite said land, and maps of the routes of said road duly filed in the proper office of the land department of the United States prior to the time that the Oregon Central Railroad Company or its successors did the same as to the grant of the said last-named company; that the congress of the United States, by an act of September 29, 1890, entitled, "An act to forfeit certain lands heretofore granted for the purpose of aiding in the construction of railroads, and for other purposes," duly forfeited to the United States that part of the said grant of the Northern Pacific Railroad Company, which embraced and covered the parcel of land herein first above described, and that the same then became and ever since has been government land and the sole property of the United States, open to homestead settlement, subject only to the rights of this plaintiff, as hereinafter stated; of all of which foregoing facts the defendant had due notice; that this plaintiff settled upon and took possession of the said real estate on the —— day of April, 1891, as a homestead, under the settlement laws of the United States, and ever since has been and now is in the exclusive and actual possession of the same, and has taken and now is taking the proper and necessary steps towards obtaining and perfecting title thereto from the United States under the general homestead laws. Wherefore this plaintiff prays that said proceedings at law be stayed, and upon trial, for a

decree perpetually enjoining the same by final decree, and decreeing that the said patent and conveyance from the United States to the Oregon & California Railroad Company, so far as it affects the parcel of land mentioned in the said complaint and first above described herein, and all conveyances therefor, subsequent to said patent, to be null and void; that the plaintiff is entitled to the possession of said land and to his costs and disbursements herein, and for such other or further relief as may be equitable.

The defendant demurred to this complaint, which being overruled, a final decree was entered in favor of the plaintiff, from which the defendant appealed.

*J. V. Beach*, for Appellant.

*V. K. Strode*, for Respondent.

STRAHAN, C. J.—The questions presented by this appeal arise on the demurrer to the cross-bill, and to that our attention must be directed. It appears from this complaint that the real property in controversy lies within the grant made by congress to the Northern Pacific Railroad Company. By act of July 2, 1864, 13 Stat. c. 217, 365, congress incorporated the Northern Pacific Railroad Company; and after providing for the organization of said corporation, and defining the line of its road, the third section of the act made a grant of land to aid in its construction. By this section congress granted to said company, by its corporate name, for the purpose of aiding the objects of said corporation, every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile on each side of said railroad line, as said company may adopt, through the territories of the United States, and ten alternate sections per mile on each side of said railroad where the line thereof passes through any state, and the United States have full title, not reserved, sold, granted or otherwise appropriated, and free from preëmption or other claims or

rights at the time the line of said road is definitely fixed, and a plat thereof filed in the office of the commissioner of the general land office.

In *St. Paul etc. R. R. Co.* v. *N. P. R. R. Co.* 139 U. S. 1, the supreme court considered the nature of this grant, and held it to be a grant *in præsenti,* in the nature of a float, until the route should be determined, and after that, attaching to specific sections capable of identification, except as to sections which were specifically reserved. And in *Buttz* v. *N. P. R. R. Co.* 119 U. S. 55, the construction of this grant was again before the court, and it was held that where the general route of the road provided for in section six of the act of July 2, 1864, was fixed, and information thereof was given to the land department by filing a map thereof with the secretary of the interior, the statute withdrew from sale or preëmption the odd sections to the extent of forty miles on each side thereof; and by way of precautionary notice to the public, an executive withdrawal was a wise exercise of authority. The statute and these authorities, taken in connection with the allegations of the complaint, are sufficient to show that the lands in controversy were separated and severed from the public lands of the United States by the location of the line of the road and the filing of a map or plat thereof in the proper land department at Washington.

The next question requiring attention is the effect of the act of July 25, 1866, granting land to aid in the construction of a railroad and telegraph line from the Central Pacific Railroad in California to Portland, Oregon. (14 Stat. at Large, 239.) By this act every alternate section of public land, not mineral, designated by odd numbers, to the amount of twenty alternate sections per mile (ten on each side) of said railroad line, were granted, and it is by virtue of this grant that the defendant claims title. By this act congress granted public lands only, and not land that had been theretofore granted or appropriated by

authority of congress in any way. Said grant did not extend to or include any lands not public, and no lands not included or covered by the terms of the grant could pass thereunder.

In *Newhall* v. *Sanger*, 92 U. S. 761, construing a similar grant, the court said: "The words public lands are habitually used in our legislation to describe such as are subject to sale or other disposal under general laws; that they were so employed in this instance is evident from the fact that to them alone could the order withdrawing lands from preëmption, private entry, and sale, apply." And it was held in the early case of *Wilcox* v. *Jackson*, 13 Pet. 496, that a tract lawfully appropriated to any purpose becomes thereafter severed from the public lands, and that no subsequent law or proclamation will be construed to embrace it or to operate upon it, although no exception be made of it; and this doctrine was reäffirmed in *Leavenworth, etc. R. R. Co.* v. *United States*, 92 U. S. 733. And this court in *Brown* v. *Corson*, 16 Or. 388, in construing the terms of the grant now under consideration, in effect held that a piece of land that had been preëmpted prior to the time the company's rights attached under the grant, though within the limits and in an odd section, was excepted out of the grant, and that the railroad company acquired no rights to such land, even if the same were afterward abandoned and no attempt made by the preëmption claimant to perfect his title by compliance with the law. And a subsisting homestead entry, valid upon its face, whose legality has been passed upon by the land authorities, and their action remains unreversed, precludes it from a subsequent grant by congress. (*H. & D. R. R. Co.* v. *Whitney*, 132 U. S. 357.)

The question that we have to consider, then, is the effect to be given to a patent issued for lands not granted, or that were excepted out of the grant under which the patent issued. In such case the patent passes no title, and is simply void. (*Morton* v. *Nebraska*, 21 Wall. 660; *Sherman* v.

*Buick*, 93 U. S. 209; *Doe ex dem. Patterson* v. *Winn*, 11 Wheat. *380; *Field* v. *Seabury*, 19 How. 323; *Simmons* v. *Wagner*, 101 U. S. 260; *Kissell* v. *Public Schools*, 18 How. 19; *Foss* v. *Hinkell*, 78 Cal. 158; *Doolan* v. *Carr*, 125 U. S. 618; *Stoddard* v. *Chambers*, 2 How. 284; *Reichart* v. *Felps*, 6 Wall. 160.)

The plaintiff has not yet shown himself to be a qualified homestead claimant, nor has he shown any compliance with the law granting homesteads to actual settlers upon the public lands of the United States, or that the lands in controversy were public lands of the United States and open to settlement under the homestead act; but assuming for the present that he might do so by an amendment of his complaint, the question is presented whether or not he would be in such privity with the title of the United States as to enable him to attack the patent under which the defendant holds and shows its invalidity. On this point we had some doubt at first, but the authorities seem to go to that extent.

*Foss* v. *Hinkell, supra*, was a case involving this principle, and it was held that the claimant stood in such relation to the land that he might attack a void patent which had been issued to the railroad company, through which the adverse party claimed title. (*Doolan* v. *Carr*, 125 U. S. 618.) In the latter case the court held that in an action at law such extrinsic facts may be proven as tend to show the patent is void. But the important question remains. It is not to every person indiscriminately that the privileges of of the homestead act are extended. It is confined to any person who is the head of a family, or who has arrived at the age of twenty-one years and is a citizen of the United States, or who has filed his intention to become such, as required by the naturalization laws; or he must be a person owning and residing on land who is allowed to enter other land lying contiguous to his land, which shall not, with the land so already owned and occupied, exceed in

the aggregate one hundred and sixty acres. (Rev. Stat. U. S. § 2289.)

The plaintiff's complaint is fatally defective, for the reason that the language employed fails to bring the plaintiff within the words of this section. Unless he be such a person as is specified in some one of the clauses of this section, it could not be claimed that he acquired any rights by virtue thereof. To enable a person, in all respects qualified under section 2289, *supra,* to acquire the rights and status of a homestead settler, he must show a compliance with section 2290, Revised Statutes of the United States. By that section any person applying for the benefit of the preceding section shall, upon application to the register of the land office in which he is about to make such entry, make affidavit before the register or receiver that he is the head of a family, or is twenty-one years or more of age, or has performed service in the army or navy of the United States, and that such application is made for his exclusive use and benefit, and that his entry is made for the actual purpose of settlement and cultivation, and not either directly or indirectly for the use or benefit of any other person; and in addition he must show the lands were unappropriated public lands of the United States.

The complaint is defective in failing to show a compliance with this section. It could hardly be contended that a person could acquire a title to the public lands of the United States without a compliance with the statutes under which such right is alleged to have been acquired. It is true the complaint alleges that the plaintiff has taken and is now taking the proper and necessary steps toward obtaining and perfecting title thereto from the United States under the general homestead laws; but this allegation presents no material fact. What are the proper and necessary steps in such case is purely a question of law; and to enable the court to determine that question, the facts must be alleged,— that is, the plaintiff must allege what he did in

that behalf,—and then the court can determine whether the steps taken are proper and necessary. The principles announced in *Larsen* v. *O. R. & N. Co.* 19 Or. 240, tend to this result.

It might be assumed that these defects could be supplied or obviated by an amendment of the complaint in the court below; and if it appeared possible, we would feel constrained to remand the cause, so that the plaintiff could, if so advised, apply to that court for such permission; but in this case such a step could not avail him. To give him any standing to contest the defendant's title, within the rule laid down by the authorities on that subject, he must be able to allege, in addition to the matters above enumerated, that at the time of his settlement the lands in controversy were unappropriated public lands of the United States. Unless they were so, by the very language of the homestead act, they could not be settled upon or taken by virtue of its provisions. Whether the defendant is within the act of March 3, 1887, Rev. Stat. U. S. Supp. 313, or the provisions of the act of September 20, 1890, Rev. Stat. U. S. Supp. 808, we did not find it necessary to determine. The facts are not now before us sufficient to enable us to determine that question. That the present plaintiff shows himself not to be entitled, is as far as we need inquire.

It follows from what has been said that the decree appealed from must be reversed and the cross-bill dismissed.