[Decided June 26, 1894.]

## HUSBANDS v. MOSIER.
[S. C. 37 Pac. 80.]

1. SWAMP AND OVERFLOWED LAND—LAWS,1870, P. 54—CONTRACT WITH STATE.
   —The act of October twenty-sixth, eighteen hundred and seventy (Laws, 1870, p. 54), was, in legal effect, an offer of sale by the state of certain lands on certain specified terms, and an acceptance thereof by a qualified applicant constituted a contract between him and the state that the state could not avoid as long as the applicant complied with the terms of the act; and the latter had a right to complete his purchase thereunder, although it was repealed in eighteen hundred and seventy-eight (Laws, 1878, p. 41).

2. IDEM—CONDITIONS OF CONTRACT—FORFEITURE—LAWS, 1870, P. 54.—By the very terms of the act of eighteen hundred and seventy payment and reclamation are made conditions precedent to obtaining title thereunder, and it was the manifest intention of the legislature to provide that all applicants for swamp lands who should fail to comply with the act by making final payment and proof of reclamation within ten years from the time of the first payment, should forfeit their rights, and the land should revert to the state for resale.

3. SWAMP AND OVERFLOWED LAND.—The only effect of the provision regarding grass and cereals in the act of eighteen hundred and seventy (Laws, 1870, p. 54), is to provide what may be accepted as sufficient proof of reclamation; it did not dispense with proof of either payment or reclamation.

4. SWAMP AND OVERFLOWED LAND—LAWS, 1878, P. 41.—The act of eighteen hundred and seventy-eight did not absolutely dispense with either payment or proof of reclamation; it simply gave to purchasers under the act of eighteen hundred and seventy, who were not in default, an option to pay two dollars and fifty cents per acre prior to January first, eighteen hundred and eighty, and obtain title without making proof of reclamation, or to complete their contracts as originally contemplated.

APPEAL from Wasco: W. L. BRADSHAW, Judge.

Suit by S. R. Husbands to have J. H. Mosier declared a trustee for plaintiff of certain lands. The facts in this case are that on October twenty-sixth, eighteen hundred and seventy, the legislature of this state passed "An act providing for the selection and sale of the swamp and overflowed lands," granted to the state by the act of congress of March twelfth, eighteen hundred and sixty: Laws, 1870, p. 54. This act of the legislature required the selection of such lands to be made under the direction of the commissioner of lands, who was required to make out and file in his office, and in the office of the county clerk of the county where the lands were located, a map of the lands so selected, and to give public notice of such selection, approval, and filing, for four weeks successively, in some weekly newspaper published in such county, or, if no newspaper was published in the county, then in such newspaper as he might select in an adjoining county. It

directed the commissioner to sell the lands so selected at not less than one dollar per acre, and provided that any person over the age of twenty-one years, who was a citizen of the United States, or had declared his intention of becoming such, might apply to the commissioner to purchase any tract or tracts thereof, designating the same by the actual survey, or, if no survey had been made, then by artificial or natural landmarks. Within ninety days from the date of publication of notice as aforesaid, the applicant was required to pay twenty per centum of the purchase price, for which a receipt was issued to him, and at any time within ten years thereafter, on proof to the satisfaction of the commissioner that the lands "had been drained or otherwise made fit for cultivation," and the payment of the balance of the purchase price, he was entitled to a patent for the land so reclaimed; but a successful cultivation in "either grass, cereals, or vegetables for three years," is made a sufficient reclamation. It was further provided that at the expiration of ten years from and after the first payment, all lands "upon which no such proof of reclamation and payment had been made shall revert to the state, and the money paid thereon shall be forfeited."

On February sixteenth, eighteen hundred and eighty-seven, the legislature passed another act entitled, in part, "An act to declare void certain certificates of sale, and to forfeit certain lands," (Laws, 1887, p. 91,) section 1 of which declares void all certificates of sale of swamp lands "on which the twenty per centum of the purchase price was not paid prior to January seventeenth, eighteen hundred and seventy-nine," and section 2 of this act declares forfeited all swamp lands sold under the act of eighteen hundred and seventy, which have not been reclaimed or paid for in accordance with the provisions of said act, and the board of school land commissioners is authorized to

26 OR.—8.

cancel the certificates of the sale thereof, which certificates are declared void; but actual settlers on tracts of three hundred and twenty acres or less, who had paid their twenty per centum, were allowed until January first, eighteen hundred and eighty-nine, in which to perfect their title, without reclamation, by the payment of the remaining eighty per centum. By section 8 any actual settler who purchased any of the lands mentioned in the act prior to February first, eighteen hundred and eighty-seven, from the original holder of any certificate declared forfeited, could, by making satisfactory proof to the board of such purchase, and of settlement, and improvement of the land, obtain a deed thereto, not exceeding six hundred and forty acres, to be selected in not more than two tracts. Section 7 of the act provides that all swamp and overflowed lands reverting to the state under the provisions of said act shall be sold.

On October eighteenth, eighteen hundred and seventy-eight, the legislature passed an act providing for the "selection, location, and sale of state lands," including swamp and overflowed lands, and expressly repealed the act of eighteen hundred and seventy: Laws, 1878, p. 41. By this act the selections were still to be made by the governor, as commissioner, but the power of sale was vested in the board of commissioners for the sale of school and university lands, consisting of the governor, secretary of state, and state treasurer, and the quantity one person might purchase was limited to three hundred and twenty acres. Section 9 declared void and of no force or effect all applications for the purchase of swamp and overflowed lands, made prior to the passage of the act, which had not been regularly made in accordance with law, or which were regularly made and the applicant had not fully complied with all the terms and requirements of the law under which they were made, including the payment of the

twenty per centum of the purchase price. Section 10
provides that when such applications have been regularly
made, and the law fully complied with, including the pay-
ment of the twenty per centum of the purchase price, the
applicant shall, on the payment of two dollars and fifty
cents per acre for such lands at any time prior to January
first, eighteen hundred and eighty, receive a conveyance
therefor without the proof of reclamation required by the
act of eighteen hundred and seventy.

It appears that on the sixth day of March, eighteen
hundred and seventy-six, one John M. Marden made an
application in due form for the purchase of lot four in
section thirty-two, township three north of range twelve
east of the Willamette Meridian, in Wasco County, con-
taining twenty and sixty-five one hundredths acres, paid
twenty per centum of the purchase price, and was given a
receipt therefor as required by law; that immediately there-
after he entered into the actual possession of said tract,
fenced and successfully cultivated the same in cereals and
grass for more than three years thereafter, and remained
in the open, notorious, and peaceable possession thereof
until on or about the thirteenth day of August, eighteen
hundred and eighty-six, at which time, for a valuable con-
sideration, he sold, transferred, and conveyed to the
plaintiff all his right, title, and interest in and to the lands
above referred to, and ever since said date the plaintiff
has been. and now is, in the open and notorious possession
and occupancy of said property.. Through oversight or
inadvertence the board of commissioners failed and neg-
lected to note in the records of their office the sale of the
land to Marden, and thereafter, on or about the twenty-
sixth day of May, eighteen hundred and ninety-one, and
while plaintiff was in the peaceable and quiet possession
and occupancy of said lands. the defendant purchased the
same, and received a deed therefor under the act of

eighteen hundred and seventy-eight, with full knowledge of the plaintiff's rights. Long prior to the commencement of this suit the plaintiff tendered to the board the balance of the purchase price for said land, and demanded a deed thereto, which the board refused to execute for the reason that it had already executed a deed to the defendant for the same land. This suit is brought to obtain a decree declaring that the defendant holds the title of certain swamp lands purchased by him from the state under the act of eighteen hundred and seventy-eight, in trust for the sole use and benefit of the plaintiff, and comes here on appeal from a decree of the court below sustaining a demurrer to the complaint.          AFFIRMED.

*Mr. Geo. E. Chamberlain* ( *Messrs. Warren E. Thomas,* and *Frank A. E. Starr* on the brief), for Appellant.

*Mr. H. S. Wilson* ( *Messrs. Franklin P. Mays,* and *Bela S. Huntington* on the brief), for Respondent.

Opinion by MR. JUSTICE BEAN.

1. From the foregoing summary of the complaint it appears that Marden's application to purchase was made under the act of eighteen hundred and seventy, and that, at the time of the sale to plaintiff, more than ten years had elapsed from the date of his first payment, and no proof of reclamation, and no payment of the remaining eighty per centum had been made as required by the act under which he purchased, nor has he or plaintiff complied with the provisions of any legislative act waiving such default. Under these circumstances the contention for the defendant is that by the terms of the act under which the application was made "the lands reverted to the state," and were subject to sale and disposition under the act of eighteen hundred and seventy-eight at the time

defendant purchased in eighteen hundred and ninety-one. That is to say, the argument of his counsel is that by the terms of the act of eighteen hundred and seventy the time of payment and proof of reclamation are of the essence of the contract between the state and an applicant to purchase swamp lands, and upon a default by the applicant the contract is at an end, and he forfeits his rights thereunder without any legislative or judicial declaration to that effect. That act has been judicially construed as an offer for sale by the state of swamp lands on the terms therein mentioned, and that an acceptance of such offer by a qualified applicant, and a compliance by him with the terms of the act, constituted a contract between him and the state for the sale and purchase of the parcel of land described in the application, "binding on each of them until relieved therefrom by some substantial default of the other not overlooked or excused," and is protected by the constitution of the United States which declares that "no state shall pass any law impairing the obligation of contracts": *McConnaughy* v. *Pennoyer*, 43 Fed. 196; S. C. 140, U. S. 1, 11 Sup. Ct. 699. It was held in the case cited that the act of eighteen hundred and seventy-eight does not attempt to interfere with, or declare forfeited, the rights of applicants under the law of eighteen hundred and seventy who were not in default at the time of the passage of the act of eighteen hundred and seventy-eight, and that the act of eighteen hundred and eighty-seven, in so far as it attempted to do so, as to applicants not in default, is void, as being obnoxious to the provision of the constitution quoted. The effect of the decision of Judge DEADY, as well as that of the Supreme Court of the United States in the case referred to, as we understand it, is that an applicant for the purchase of swamp land under the act of eighteen hundred and seventy has a contract with the state from the time of the filing and acceptance of his

application, which cannot be repudiated by the state so long as he complies with the terms of the act, and that he is entitled to complete his purchase under such act, although in the mean time it may have been repealed.

2.    This case, however, does not decide that either the act of eighteen hundred and seventy-eight or eighteen hundred and eighty-seven is void in so far as they declare forfeited applications in which the purchaser or applicant was in default at the time of their passage, nor was the question presented or considered as to the effect of neglect by an applicant to comply with the act of eighteen hundred and seventy in making final payment and proof of reclamation within the time specified.   From the construction of the act of eighteen hundred and seventy-eight, adopted by the Supreme Court of the United States, it is manifest that it did not affect Marden's rights, because at the time of its passage he was not in default, as he had previously paid the twenty per centum, and the time in which he was required to make the final payment had not yet elapsed.   The inquiry then is whether or not Marden's subsequent failure to make payment and proof of reclamation within the time required by the act of eighteen hundred and seventy, and plaintiff's neglect to avail himself of the provisions of the act of eighteen hundred and eighty-seven, had the effect of relieving the state from liability under the contract.   We think it cannot be successfully contended that the state lacked power to provide, as one of the terms of the contract for the sale of its swamp land, that time of payment and proof of reclamation should be of the essence of the contract, and that, on a failure by the applicant to comply with such terms, his right to purchase should cease, and his contract be at an end; and this it seems to us is the manifest effect of the act of eighteen hundred and seventy.   By that act the state offered for sale its swamp lands on certain terms and

conditions, among which was that the applicant should, within ninety days after the publication of the notice of the map thereof being filed in the county clerk's office, make the first payment of twenty per centum, and within ten years thereafter reclaim the land, and pay the remainder of the purchase price. And, as a condition precedent to the issuance of a patent, it required that the applicant should prove to the satisfaction of the commissioner that the land had been drained or otherwise made fit for cultivation, and declared in positive terms that at the expiration of ten years from and after the first payment, all swamp lands upon which no such payment and proof of reclamation has been made "shall revert to the state and the money paid therefor shall be forfeited." From these provisions it is manifest that the legislature intended to provide that all applicants to purchase swamp land, who should fail to comply with the act by making final payment and proof of reclamation within ten years from the time of the first payment, should forfeit their right to purchase, and the land should again become subject to sale and disposition.

3. For the plaintiff it is contended that successful cultivation of the land in grass or cereals for three years dispensed with the proof of reclamation. We are unable to so construe the law, although the question is practically immaterial in this case, because it cannot be claimed that successful cultivation, even if it rendered proof of reclamation unnecessary, would dispense with the necessity of making the final payment, which, by the act, is made a condition precedent to the right of an applicant to obtain title. Before a patent can issue the applicant is required to prove to the satisfaction of the commissioner that the lands have been drained or otherwise rendered fit for cultivation, and also to make his final payment, and the only effect of the clause referred to, it seems to us, is that proof

of successful cultivation for three years shall be sufficient evidence of reclamation.

4. Nor do we think the act of eighteen hundred and seventy-eight dispensed with payment and proof of reclamation as required by the act of eighteen hundred and seventy, unless the applicant availed himself of the offer therein contained, by the payment of two dollars and fifty cents per acre prior to January first, eighteen hundred and eighty. The act of eighteen hundred and seventy-eight simply gave an applicant under the act of eighteen hundred and seventy, who was not in default, an option to pay two dollars and fifty cents per acre within a certain time, and obtain a title without proof of reclamation, if he so desired; but did not deprive him of the right to proceed to obtain title under the act of eighteen hundred and seventy, which was a part of his contract, and binding on the state so long as he complied with its terms, although repealed by the legislature. As a consequence, it would seem that, by the terms of the contract between Marden and the state, his right to purchase had ceased, and the land had reverted to the state, freed from his claim, at the time plaintiff purchased from him, and therefore he had no interest in the land which he could sell or convey. But if it be conceded that we are mistaken in this view, and a legislative declaration of forfeiture was necessary, such is the manifest effect of the act of eighteen hundred and eighty-seven, which declared forfeited all swamp or overflowed lands sold under the act of eighteen hundred and seventy which had not been reclaimed and paid for in accordance with the provisions of the act, except that actual settlers, whether original applicants or purchasers from such original applicants, were permitted to perfect title to a certain quantity of land upon complying with the terms and conditions of the act. But no right is claimed in this case under this saving clause, because it is not pretended

or alleged that the terms and conditions of the act were complied with. At the time of the passage of the act of eighteen hundred and eighty-seven the land embraced in Marden's application, although it had been reclaimed by successful cultivation, had not been paid for in accordance with the provisions of the act of eighteen hundred and seventy, and was therefore declared forfeited, and as plaintiff does not bring himself within the saving clause of the act it necessarily follows that the decree of the court below must be affirmed.                AFFIRMED.