Argued 20 January, decided 8 February, 1904.

## MILLER v. WATTIER.

[ 75 Pac. 209.]

STATE LAND BOARD—PUBLIC LAND.

1. The board of commissioners for the sale of school and university lands, which under the act of 1870 had control of the swamp and overflowed lands belonging to this State, was more than a mere governmental agent for that purpose, it was part of the administrative department, and therefore its action in granting an application to purchase swamp land belonging to the State is final in a subsequent suit between rival claimants thereof.

PLEADING ISSUANCE OF CERTIFICATE BY STATE BOARD.

2. In pleading a title obtained from the State of Oregon through the land board it is sufficient to state that on due application the board issued to a stated person a certificate of purchase for certain land, and the pleading need not show the particulars in which the applicant was qualified to purchase: *Stewart* v. *Altstock*, 22 Or. 182, distinguished.

FORFEITURE OF CLAIM TO SWAMP LAND—STATUTE OF 1870.

3. The act of 1870, regulating the sale of swamp lands (Laws 1870, pp. 54, 56, ¿ 4), provided for a forfeiture of the land contracted for upon a failure by the purchaser to comply with the conditions of this law, without any declaration to that effect.

EFFECT OF ACT OF 1878 ON SWAMP LAND PURCHASES.

4. The law of 1878, concerning the purchase of swamp land from the State (Laws 1878, pp. 41, 46, ¿ 9), did not affect the rights of applicants under the law of 1870 who had made the first payment thereby required.

WAIVER BY ACT OF 1887 OF PRIOR FORFEITURES OF SWAMP LAND.

5. Section 5 of the swamp land act of 1887 is an explicit waiver of the forfeiture and reversion of lands sold under the act of 1870, on certain conditions, which are all satisfied in this case.

EVIDENCE OF GOOD FAITH.

6. The evidence establishes that defendant, who purchased the land in question from the State after plaintiff had purchased it, did so with at least constructive notice of plaintiff's claim, and therefore cannot be considered a *bona fide* purchaser.

From Marion : HENRY H. HEWITT, Judge.

This suit was instituted some ten years ago by W. P. Miller against Vallier Wattier, substitutions having since been made as to both parties; its purpose being to have the defendant declared to hold the legal title of lot No. 3, section 7, township 6 south, range 1 west, Willamette Meridian, containing 55.22 acres, in trust for plaintiff. The complaint states, in substance, that the tract described was in March, 1860, and still is, swamp and overflowed land, and as such was, by act of Congress approved March 12,

1860, granted to the State of Oregon; that on November 11, 1871, said tract, with other land, was by the board of commissioners for the sale of university and other school lands belonging to the State of Oregon duly selected; that thereafter, "upon due application made by John F. Miller for the purchase of said land," the board, on April 9, 1872, sold the above tract to him as swamp and overflowed land, for which he paid the State 20 per centum of the purchase price, and thereupon received from the board a certificate of sale; that on June 29, 1891, Miller, for a valuable consideration, assigned and transferred said certificate, together with all his right, title, and interest in said land, to William P. Miller, the plaintiff; that on April 18, 1882, the plaintiff paid to the State of Oregon the balance of the purchase price, which was accepted by the said board of commissioners in full payment thereof, and paid into the state treasury; that the defendant, with full knowledge of the facts here alleged, and with the intention to defraud plaintiff, applied on January 9, 1893, to said board of commissioners to purchase said land; that the board, without notice to plaintiff or rightful authority, executed and delivered to him a deed thereto; that the plaintiff is the equitable owner thereof, and entitled to a conveyance from defendant of the legal title. Every fact as alleged in the complaint is denied by the answer, and for a further defense it is alleged that defendant purchased the land in good faith, without notice or knowledge of plaintiff's claim of right thereto. The decree was for plaintiff, and the defendant appealed.      ·      AFFIRMED.

For appellants there was a brief over the name of *Williams, Wood & Linthicum*, with an oral argument by *Mr. Stewart B. Linthicum* and *Mr. Rodney L. Glisan*.

For respondents there was a brief over the names of *W. H. & Webster Holmes*, with an oral argument by *Mr. William H. Holmes*.

MR. JUSTICE WOLVERTON, after stating the facts in the foregoing terms, delivered the opinion of the court.

The complaint is challenged at the outset as not stating facts sufficient to constitute a cause of suit. This question seems to us to have been made here for the first time, but is now strenuously insisted upon, and commands consideration. The contention centers about the allegation that the sale was made on due application of John F. Miller; it being urged that this is but a conclusion of law, and not an ultimate and issuable fact, and was therefore wholly insufficient to support the decree. It is suggested that, as a good pleading, it should have set out the qualifications of the applicant to take under the law, and his subsequent compliance with the conditions imposed upon a purchaser from the State of such lands. This involves an examination of the several acts of the legislature of this State bearing upon the subject.

Section 3 of the act of 1870 (Laws 1870, pp. 54, 55), provided for the sale of swamp and overflowed lands at a price not less than one dollar per acre, and that any person over the age of twenty-one years, being a citizen of the United States, or having filed his declaration to become such, might become an applicant to purchase upon filing his application for the tract desired, describing it. It further provided that within ninety days after public notice of the application, approval, and filing of maps and descriptions of the lands selected as swamp and overflowed, 20 per centum of the purchase money should be paid to the commissioner, whose duty it was to issue to him a receipt therefor; the balance to be paid on proof of reclamation. It was further provided by the same section that, in case of adverse applicants for the same tract or parcel, it should be the duty of the commissioner to sell the same to the legal applicant therefor whose application was first filed. Section 4, p. 56, provided that patent should issue upon

proof that the land had been drained or otherwise made
fit for cultivation, and the payment of the balance of the
purchase money, but that, if no such proof or payment
had been made at the expiration of ten years from and
after the first payment, then that the land should revert
to the State, and the money paid therefor be forfeited. Section 6, p. 56, provided that, in case the office of commissioner
of lands was not created by law, the provisions of the act
should be executed by the board of commissioners for the
sale of school and university lands. By section 9 of the
act of 1878 (Laws 1878, pp. 41, 46), all applications for
purchase made previous to the passage of the act, which
had not been regularly made in accordance with law, or
had not been fully complied with, including the payment
of 20 per centum of the purchase money, were thereby
declared void and of no effect. By section 2 of the act of
1887 (Laws 1887, p. 10), all swamp or overflowed lands
sold in pursuance of the act of 1870 which have not been
reclaimed or paid for in accordance with the provisions
thereof are declared forfeited, and the certificates of sale
void, and the board of commissioners is authorized to cancel the sale. But section 5 provides that any legal applicant who has complied with the provisions of the act of
1870, including the payment of 20 per centum of the purchase price, prior to January 17, 1879, shall, without reclamation, upon payment of the balance of the purchase
price, be entitled to, and shall receive, a deed for the land,
provided that such payment be made prior to January 1,
1889, and provided further, that no deed shall issue to any
one person for more than 640 acres.

1. This is not a suit against the board of commissioners
for the sale of school and university lands, to require it to
issue a patent, but is to determine, as between the plaintiff
and defendant, who has the better right to the legal title,
which has passed out of the State, and became vested in

the defendant.  Plaintiff based his right upon his certificate of sale, which he alleged that his predecessor received from the board upon payment of 20 per centum of the purchase price, and a compliance with the law by payment of the balance of such purchase price to the State of Oregon on April 18, 1882.  Under the provisions of section 3 of the act of 1870, only legal applicants were entitled to purchase swamp land; and, to constitute one such an applicant, he must have been over twenty-one years of age, and a citizen of the United States, or have filed his declaration to become such—a very simple qualification.  It was the duty of the board of commissioners to determine as to this, and it was given the authority to decide as between adverse applicants, in which case it was required to sell to the legal applicant whose application was first filed.  Thus the board was clothed with the power to sell and the authority to determine as to the fitness and qualifications of the applicant to purchase under the act; it being the agent of the State, with restricted authority, for the sale and disposition of its public lands.  It is more than an agent.  It is part of the administrative department of the government—made so by the constitution.  But its power to dispose of the public domain is subject to the control of the legislative department.  It exercises its power, however, independent of the judiciary department, and its decisions are not subject to revision by the courts.  "It occupies in this State," says Mr. Justice BOISE in *Corpe* v. *Brooks*, 8 Or. 222, 224, "the same relation to the state judiciary as the land department of the United States does to the United States courts.  *  *  But the courts may, on a proper showing, decree that the patentee holds the land as the trustee of one having a better right in equity."  To the same purpose is *Robertson* v. *State Land Board*, 42 Or. 183 (70 Pac. 614).

2. Acting in pursuance, therefore, of the duty and re-

strictions imposed, a certificate of sale, when granted, or a receipt of the board acknowledging the first payment of 20 per centum of the purchase price, is at least *prima facie* evidence, if not more, that the applicant was duly qualified to purchase, for we must assume that such certificate or receipt would not have been issued or given without a due compliance by the applicant with the statute. Having been issued or given after the time for determination as to the applicant's qualifications, it is paramount to a certification that he possessed the necessary fitness, as to age and citizenship, to become a purchaser. Now, the plaintiff, as we have seen, based his right to the patent upon his certificate of purchase, and his subsequent compliance with the law in making final payment; and it was therefore only necessary for him to allege, as has been done here, that upon due application made for the purchase of the land, and a payment of 20 per centum of the purchase price, the board issued to him a certificate, which stands as its determination as to his fitness to become a purchaser, and any inquiry that is to go behind the certificate must be inaugurated by the defendant. The case of *Stewart* v. *Altstock*, 22 Or. 182 (29 Pac. 553), is not an authority against this view. It is simply not in point here. There the settler had no receipt or certificate from any authorized officer showing compliance with the law, but was depending alone upon a settlement upon the land; and, having failed to show by the allegations of his complaint that he was qualified to take as a homestead settler, the court very aptly decided that the complaint was insufficient. It is well to say in this connection, however, that a copy of the application presented to the board, upon which the sale was made and the certificate issued, is in evidence, and it shows that the purchaser was legally capacitated to purchase at the time, so that not only is the

complaint sufficient in the respect criticised, but the proof supports the determination of the board.

3. The next question presented is whether the plaintiff's predecessor complied with the further requirements of the law in completing the purchase; it being urged on the part of counsel for defendant that he was in default, and that the land reverted to the State, and was again subject to sale when the defendant obtained his patent. As to the final payment, the complaint shows what the fact is proven to be, that it was made April 18, 1882. The only evidence touching the matter is the receipt of the clerk of the board, indorsed upon the back of the certificate, which is as follows:

"Salem, April 18, 1882.

Received on the within the sum of $488.93, being the balance of the purchase price of the within described lands. By order of the Board of this day.

E. P. McCornack,
Clerk of Board."

The certificate shows a purchase of 611.16 acres, the tract in question being included therewith, and the payment indicated by the receipt, added to the $122.23 shown to have been paid by the certificate of sale, exactly equals the full purchase price of the whole at one dollar per acre. There is not a scintilla of evidence to show that this latter payment was made at any earlier date than that indicated by the receipt. Ten years and more had elapsed, therefore, from the time of the first payment before the last was made. It is not claimed that any reclamation of the land was ever made, so there was an absolute failure to comply with the act of 1870; and, without more, we are clear that the land reverted to the State, and the purchaser incurred a forfeiture of the first payment. It was competent for the State to make time of payment and reclamation the essence of the contract (*Pennoyer* v. *McConnaughy*, 140 U. S. 1, 11

Sup. Ct. 699; *Husbands* v. *Mosier*, 26 Or. 55, 62, 37 Pac. 80), and the language employed shows an unmistakable intendment to do so. The declaration of the legislature is that, "at the expiration of ten years from and after his first payment, all swamp lands claimed by an applicant, upon which no such proof of reclamation and payment has been made, shall revert to the State, and the money paid thereon shall be forfeited ": Laws 1870, p. 56, § 4. Language could hardly be more explicit for the purpose of indicating that time was intended to be of the essence of the contract, and that an absolute reversion and forfeiture should take place if the conditions of the sale in the respects alluded to were not absolutely observed. Nor was it necessary that the forfeiture be judicially declared before the board could sell to another purchaser. It took place *ipso facto* upon the nonobservance of the conditions of the sale, and the purchaser at once lost all right or interest therein : *Borland* v. *Lewis*, 43 Cal. 569.

4. Beyond this, some reliance is had upon section 9 of the act of 1878 as a direct declaration of forfeiture. But its provisions did not affect the case at bar, as the first payment had been made in full accord with the act of 1870 under which the application was filed. The board has itself placed a construction upon that section, which has met with the approval of the Supreme Court of the United States (*Pennoyer* v. *McConnaughy*, 140 U. S. 1, 11 Sup. Ct. 699), showing that the intendment was to declare all applications void and of no effect where the applicant had not paid the 20 per centum of the purchase price in accordance with the act of 1870; that is, where such payments had not been made at the time thereby specified. It therefore did not affect the title of the applicant, as in the present case the payment was timely and in accordance with that act.

5. While it was and is perfectly competent for the State

to impose such terms and conditions as it may deem proper relative to the sale and disposal of its public lands, it could unquestionably, if it saw fit, waive a forfeiture : *Borland* v. *Lewis*, 43 Cal. 569. Whether the board could make such a waiver without authority from the legislature is not clear. If it could, the receipt of the last payment after the ten years had fully elapsed would be a persuasive circumstance, indicative of its purpose to do so. Plaintiff's cause, however, has not to depend upon that, for the legislature has itself, by section 5 of the act of 1887 (Laws 1887, pp. 9, 10, § 5), by explicit and positive declaration, waived both the reversion and the forfeiture. It applies to any legal applicant who had complied with the provisions of the act of October 26, 1870, including the payment of the 20 per centum of the purchase price prior to January 17, 1879, and declares that such an one, without reclamation, upon the payment of the balance of the purchase price prior to January 1, 1889, shall receive a deed for the land, provided, further, that no deed shall issue to any one person for more than 640 acres. Plaintiff's predecessor was clearly within this statute. His first payment was made in 1872, his second in 1882, and the amount of land for which the patent or deed is sought is less than 640 acres. Being relieved of making reclamation, he has complied with every feature of this late act, and the waiver of forfeiture in his behalf is operative to entitle him to a deed.

6. To overcome this condition, it is alleged in behalf of defendant, by way of separate defense, that he purchased from the board in good faith, for value, and without any intimation or notice of plaintiff's claim or right to the land. His deed was executed and delivered to him by the board January 9, 1893. At the time of its execution and delivery the board was evidently of the impression that Miller had absolutely forfeited all right to a deed, superinduced by the mistaken idea that Miller had not made

the second payment, when, as a matter of fact, he had made such payment—not within the time prescribed by the act of 1870, it is true, but he had been relieved of the forfeiture thereby incurred, and was entitled notwithstanding to a deed. Why it had not been previously issued to him does not appear, but the fact of payment had somehow been lost sight of. Mr. McCornack's testimony convinces us that Wattier had notice of Miller's rights in the premises. He says: "I showed him the record, which disclosed the fact that this lot had been sold to John F. Miller—on the certificate of sale I think twenty per cent of the purchase price had been paid—and that the balance of the purchase price had been paid by Mr. Miller. My recollection just as to the details of that is not distinct. It is the general idea that he called as to the condition of the land, and was informed." On cross-examination he further says: "I do not remember distinctly what words we used. He called, and my recollection is that he was fully informed as to the condition of the land, but just what was said by either of us I do not remember." Aside from this, Wattier's testimony shows that he and Miller had had litigation with reference to the drainage of this particular piece of land, with other swamp lands in the neighborhood. He took counsel, however, before buying, and was advised that he could purchase with safety, but by some oversight his counsel were not made aware of the indorsement of the last payment upon Miller's certificate; otherwise the advice would evidently not have been given. The fact remains, however, that Wattier knew of it, or should have known of it. He denies that Miller ever claimed the land, or ever filed on it, but in this he is in error, as every other person connected with the matter who testifies in the case concedes as much, and his deed was given him upon the mistaken idea that this particular tract had lapsed and had become again subject to sale, when in reality it had not.

We are clear that Wattier had such notice and knowledge of the condition of the title as to exclude the idea that he took as an innocent purchaser, and the plaintiffs here are there- fore entitled to the relief sought.          AFFIRMED.

---

Decided 8 February, rehearing denied 18 April, 1904.