### STUART v. HOLLAND et al.

#### (Circuit Court, D. Oregon. June 27, 1910.)

#### No. 1,123.

1. EQUITY (§ 72*)—"LACHES"—ELEMENTS IN GENERAL.

In order that "laches" may bar a suit in equity, it must appear that, beyond the mere lapse of time, it would be inequitable in some matter of substance to permit the claimant to assert his alleged right as against those having enjoyed the same in repose in the meanwhile.

[Ed. Note.—For other cases, see Equity, Cent. Dig. § 213; Dec. Dig. § 72.*

For other definitions, see Words and Phrases, vol. 5, pp. 3969–3972; vol. 8, p. 7700.]

2. EQUITY (§ 67*)—LACHES—COMMENCEMENT OF SUIT.

The institution of a suit does not relieve a person from the charge of laches, and, if he fail in the diligent prosecution of his action, the consequences are the same as though he had never taken it.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 67.*]

3. WATERS AND WATER COURSES (§ 177*)—DAMS—INJUNCTION—LACHES—ELEMENTS.

Where a suit to enjoin the maintenance of a dam was begun in 1884, and nothing was done in its prosecution from June, 1885, to May, 1907, during which time there was nothing to prevent its prosecution, though a part of the dam was located on land the title to which was involved in other litigation, and though the patent to the lands overflowed by reason of the existence of the dam did not issue till long after the commencement of the suit, but the value of the land in the meantime had greatly increased and its ownership changed, the suit is barred by laches of complainants.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. § 262; Dec. Dig. § 177.*]

In Equity. Suit by Wanna Stuart against Josephine Holland and others. Demurrer to amended bill of complaint sustained.

This suit was commenced October 9, 1884, in the circuit court of the state of Oregon for Marion county, under the title of John F. Miller and Wm. P. Miller v. Vallier Wattier, to enjoin the maintenance of a dam across Little Pudding river, in Marion county. The cause was removed to this court at once, whereupon a motion was interposed to remand, resulting in a denial thereof June 17, 1885. From that date nothing further was done until May 27, 1907, when a motion was made for a continuance of the cause in the name of the present litigants. By order of June 22, 1908, the motion was allowed;

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the complainant having succeeded, by deeds of conveyance, to the right, title, and interest of John F. and William P. Miller in the premises affected and the cause of suit, and the defendants to those of Vallier Wattier, by descent as heirs at law. Thereupon the complainant filed her amended bill of complaint.

The bill shows: That John F. Miller made application to the state in 1872 to purchase certain of the lands described therein as swamp and overflowed lands, part of which lands so applied for were patented to the state September 25, 1890, and a small tract, consisting of lot 3 in section 23, township 6 south, range 2 west, on March 9, 1905. That the board of school land commissioners for the state issued to him a certificate of purchase. That, with a view to reclaiming the lands in pursuance of the laws of the state, William P. Miller became interested with John F. Miller therein, and while they were so interested together this suit was first instituted. That Little Pudding river flows through lot 3, section 7, township 6 south, range 1 west, being a tract of the lands described in the bill of complaint in which complainant is interested. That the dam in question is constructed partially upon this tract, and is maintained at the height of eight feet, which causes the water to flow back upon complainant's land a long distance, and to cover a large area thereof, with other lands belonging to other persons, to complainant's great injury and damage. That defendants are the owners of a small gristmill and a small sawmill, situated upon lands belonging to them adjoining the lands of the complainant, and supposedly the dam is maintained for diverting water for operating said mills. It is further shown that the said dam had been maintained for a long period of time prior to the time of the institution of the suit, and that the lands of complainant, if reclaimed by drainage, are worth $250 per acre. Then it further appears that said lot 3 was for a long time in litigation between William P. Miller and Vallier Wattier which finally resulted favorably to the administrator of the estate of William P. Miller; that at the time litigation was entered upon concerning said lot 3 it had not been patented to the state, and was not so patented until the day and date in the amended complaint set forth and mentioned. As to this allegation there is some mistake, as the amended complaint shows nothing as to when the patent passed from the government as to this particular tract.

To this bill a demurrer has been interposed, based, among other things, upon the ground that the complainant has been guilty of laches precluding her from obtaining the relief prayed for.

J. A. Carson and W. H. Holmes, for complainant.

Williams, Wood & Linthicum and George G. Bingham, for defendants.

WOLVERTON, District Judge (after stating the facts as above). In the view I take of this controversy, it will be unnecessary for me to examine other than the one ground of demurrer, namely, that which relates to laches of the complainant in prosecuting her suit. The cause of suit is the same now as it was when instituted. The titles to some of the lands involved have, since the commencement of the suit, been completed by patents from the general government; yet we must assume that complainant's predecessors had such an interest in the lands as to enable them to maintain the suit if she, as their successor, could maintain it now, barring the objection that she has been guilty of laches. So that the right to maintain the suit was as perfect when commenced as it is now, and has so continued throughout the whole time that it has been pending. At any rate, this is the same suit as it was when instituted, with the exception that new parties have been substituted by revivor for the old.

By recurrence to the facts, it will be seen that the suit lay dormant from June 17, 1885, to May 27, 1907, a period of almost 22 years. The only excuse attempted to be given for the delay is that a dispute was long pending between Vallier Wattier and William P. Miller, the ancestor of the present complainant, touching the right of ownership of lot 3, section 7, township 6 south, range 1 west. This dispute was eventually decided in the Supreme Court of the state in February, 1904, after it had been pending some 10 years. Miller v. Wattier, 44 Or. 347, 75 Pac. 209. I am not advised of the reason for the long delay in bringing that cause to a final determination; but it is not apparent why that suit should have delayed this one. True, the dam complained against is built partially upon this particular tract; but the mere location of the dam is not a vital element in the dispute. It would amount to a trespass, no doubt, for the defendants to enter upon the premises of complainant for maintaining the dam; but the matter of signal importance attending the injunction is that the defendants shall be restrained from overflowing the lands of the complainant. This cause of suit has continuously existed for this long period of time, and the particular location of the dam was not important. If the dam had been located wholly upon the premises of the defendants, or upon those of the plaintiff, or upon the premises of some one else, the result in overflowing the lands of the complainant would have been the same, and the injury and damages the same. So that the dispute and litigation about the ownership of said lot 3 has had nothing to do in real signification in delaying the prosecution of the present cause.

The term "laches" is relative in its significance. It depends largely upon the particular and attendant circumstances and conditions. What would be laches under one train of circumstances would not be so considered under another. While lapse of time is an absolutely essential element of the term, yet generally it must be attended with some hurtful results, which renders it inequitable for the party suffering the delay to assert his alleged rights against those who have enjoyed them in repose, believing themselves secure in such enjoyment.

"Laches in a general sense is the neglect to do what in law should have been done for an unreasonable and unexplained length of time under circumstances permitting diligence. More specifically it is inexcusable delay in asserting a right. Strictly speaking laches implies something more than mere lapse of time; it requires some actual or presumable change of circumstances rendering it inequitable to grant relief." 16 Cyc. 152.

This court has held that "the mere lapse of time and the staleness of the claim, in cases where no statute of limitations directly governs the case," is a valid defense, and this as against the general government. United States v. Tichenor (C. C.) 12 Fed. 415, 426, citing Story, Eq. Pl. § 813, and Story, Eq. Jur. § 1520. That was a case where the government had allowed 24 years to pass without asserting its alleged rights. And so also it has been held that, 'to support the defense of laches, it need not be shown that the defendant has been injured by the delay. Jones v. Perkins, (C. C.) 76 Fed. 82.

The rule supported by the stronger authority, however, is thus stated by Mr. Justice Brown, in Galliher v. Cadwell, 145 U. S. 368;

372, 12 Sup. Ct. 873, 874 (36 L. Ed. 738), after remarking that the cases are practically uniform upon the subject:

"They proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been abandoned; and that, because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him to now assert them."

And later in the same opinion, after a review of several cases from the United States Supreme Court, it is said:

"They all proceed upon the theory that laches is not like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced—an inequity founded upon some change in the condition or relations of the property or the parties."

Again, in Townsend v. Vanderwerker, 160 U. S. 171, 186, 16 Sup. Ct. 258, 262 (40 L. Ed. 383), the same distinguished jurist says:

"The question of laches does not depend, as does the statute of limitation, upon the fact that a certain definite time has elapsed since the cause of action accrued, but whether, under all the circumstances of the particular case, plaintiff is chargeable with a want of due diligence in failing to institute proceedings before he did."

And yet later, in O'Brien v. Wheelock, 184 U. S. 450, 493, 22 Sup. Ct. 354, 370 (46 L. Ed. 636), the court says:

"The doctrine of courts of equity to withhold relief from those who have delayed the assertion of their claims for an unreasonable length of time is thoroughly settled. Its application depends on the circumstances of the particular case. It is not a mere matter of lapse of time, but of change of situation during neglectful repose, rendering it inequitable to afford relief."

Thus it would seem that, beyond the mere lapse of time, it should appear that it would be inequitable in some matter of substance to permit the claimant to assert his alleged right as against those having enjoyed the same in repose in the meanwhile. As peculiarly applicable to the present controversy, I quote now language which also has the approval of the Supreme Court:

"Courts of equity, in cases of concurrent jurisdiction, consider themselves bound by the statutes of limitation which govern courts of law in like cases, and this rather in obedience to the statutes than by analogy.

"In many other cases they act upon the analogy of the like limitation at law. But there is a defense peculiar to courts of equity founded on lapse of time and the staleness of the claim, where no statute of limitation governs the case. In such cases, courts of equity act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, refuse to interfere where there has been gross laches in prosecuting the claim, or long acquiescence in the assertion of adverse rights. Long acquiescence and laches by parties out of possession are productive of much hardship and injustice to others, and cannot be excused but by showing some actual hindrance or impediment, caused by the fraud or concealment of the parties in possession, which will appeal to the conscience of the chancellor.

"The party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor

may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer." Badger v. Badger, 2 Wall. 87, 94, 17 L. Ed. 836.

Furthermore, the institution of a suit does not relieve a person from the charge of laches, and, if he fail in the diligent prosecution of his action, the consequences are the same as though he had never begun it. Johnston v. Standard Mining Co., 148 U. S. 360, 13 Sup. Ct. 585, 37 L. Ed. 480; Bybee v. Summers, 4 Or. 354, 361.

In the case at bar the bill of complaint shows no fraud or deceit practiced by the defendants, whereby either complainant or her predecessors have been lulled into supposed security, or misled to their injury in any particular. She and her predecessors before her have been at all times free and unhampered to prosecute their suit, and it is entirely by their own neglect that it has not been done. In the meanwhile, after so long a time, the rights and privileges of the defendants have increased in value and importance. This is deducible from the very fact that the complainant is alleging that her lands will be of great value if drained, namely, the value of $250 per acre. This must be largely in excess of their value when this suit was begun in 1884. So that it is manifest that the defendants' status is not the same now as then, and that it would be inequitable, after this long lapse of time, to permit them to be disturbed in their right and privilege. It will be noted that defendants have not only enjoyed their privilege during the pendency of this suit since 1884, but that they so enjoyed it "for a long period" even prior to the institution thereof. This appears from the bill of complaint. Relative rights have surely changed in matter of substance after the lapse of so great a length of time, and the complainant, after such a long and continuous neglect to prosecute, cannot now be permitted to disturb them.

The demurrer will therefore be sustained, and it is so ordered.