Decided 3 January; rehearing denied 13 March, 1899.

## WARREN *v.* DE FORCE.

[55 Pac. 532.]

1. PUBLIC LANDS—RIGHT TO PURCHASE TIDE LAND.—A purchaser of public lands under Laws, 1878, p. 41, ⸹ 5, providing, *inter alia*, that an application to purchase shall be accompanied by an affidavit that the purchaser has not directly or indirectly made any previous purchase of lands from the state, which, together with the lands described in his application, exceed a stated amount, depending on the class of land, is not entitled to purchase the maximum acreage of either class without regard to his previous purchase of lands belonging to the other class; in other words, a purchaser's right is exhausted by purchasing the maximum acreage of any one class.

2. EQUITY JURISDICTION.—Plaintiff bought public tide lands of school commissioners by falsely swearing that he had not previously purchased three hundred and twenty acres of state lands. The commissioners executed no deed to him, and thereafter sold and conveyed the lands to defendant, who knew of plaintiff's purchase. *Held*, that plaintiff was not equitably entitled to any relief, as the statute, Laws, 1878, p. 41, ⸹ 5, authorizes the commissioners to sell only three hundred and twenty acres of state lands to a single settler.

From Clatsop : THOS. A. MCBRIDE, Judge.

Suit by P. C. Warren and another against J. H. De Force and others to have defendant, Sarah De Force, decreed to hold the legal title to certain land in trust for plaintiffs. Decree for defendants, and plaintiffs appeal.

AFFIRMED.

For appellant there was a brief over the name of *Fulton Bros.*, with an oral argument by *Mr. Chas. W. Fulton*.

For respondent there was a brief over the name of *John H. & A. M. Smith*, and *Wm. M. La Force*, with an oral argument by *Mr. John H. Smith*.

MR. JUSTICE BEAN delivered the opinion.

This is a contest between different purchasers of the same land from the state. The facts are that on Febru-

ary 28, 1893, the plaintiff D. K. Warren applied to the Board of School Land Commissioners to purchase twenty-seven and eighty-eight one-hundredths acres of tide lands in Clatsop County, fronting and abutting on the donation claims of Eberman and Coffinbury, and lot 1, of section 15, township 8 N., of range 10 W., and paid the state the appraised value thereof. His application, being in the form required by statute, was approved, and a deed made to him, but, by mistake of the clerk of the board, the tide land in front of lot 1 was omitted therefrom. Thereafter, and in February, 1893, the defendant Sarah De Force, with knowledge of plaintiff's prior application, applied for and purchased from the board of commissioners the tide land in front of lot 1, and received a deed therefor, and the object of this suit is to have her decreed to hold the legal title of such land in trust for Warren and his co-plaintiff, who has succeeded to an undivided half of his interest therein. As a part of and accompanying his application, Warren filed an affidavit made by himself, of the kind and substance required of persons applying to purchase state lands by the statute in force at that time, in which he states, among other things, that he had not made any previous purchase of lands from the state, which, together with the lands described in the application, would exceed three hundred and twenty acres, although, as it is now admitted, he had in fact prior to that time purchased from the state more than four hundred acres of land in his own name and right. Upon these facts, the court below held that plaintiffs were not entitled to any relief in this suit, because Warren had exhausted his right to purchase lands of the state prior to his application for the lands in controversy ; and this is practically the only question in the case.

1. Warren's application was made under the pro-

visions of the act of October 18, 1878 (Laws 1878, p. 41).
By section 3 of this act it is provided that the Board of
Commissioners for the Sale of School and University
Lands "are hereby authorized and required to sell school
and university, capitol building lands, land granted to
the state by the United States adjoining salt springs,
lands granted the state for the purpose of internal im-
provement, and agricultural college lands which have
been, or may hereafter be, selected, to actual settlers, in
such quantities as they may deem advantageous to the
state, not exceeding a half section to any one settler, and
not exceeding one hundred and sixty acres to any one
person not a settler." Section 4 provides that "Such
board of commissioners are further authorized to sell
swamp and overflowed lands, which may have been or
may hereafter be selected, as fast as such selections are
segregated and approved, as required by the laws of the
United States granting such lands to the state ; and tide
and overflowed lands on the sea coast, owned by the
state, in such quantities as they shall deem most advan-
tageous to the state, not exceeding three hundred and
twenty acres to any one person." And section 5 pro-
vides that all applications to purchase any of the lands
of this state "shall be accompanied by the affidavit of
the applicant, taken before some notary public or county
clerk, to the effect that he is eighteen years of age, is a
citizen of the United States, or has declared his intention
to become such ; that he is a citizen of this state ; that
he has not directly or indirectly made any previous pur-
chase of lands from the state, or any one for him, which,
together with the lands described in the application,
exceed—in case such application is for the purchase of
any of the lands specified in the third section of this act
by a settler—three hundred and twenty acres, or, in case
of a non-settler, one hundred and sixty acres, or, if the

application is for the purchase of any lands specified in the fourth section of this act, three hundred and twenty acres.''

The contention for the plaintiffs is that by sections 3 and 4 the state lands are divided into two classes, and that a qualified purchaser is entitled to purchase the maximum acreage of either class without regard to his previous purchase of lands belonging to the other, and hence the fact that Warren had purchased more than three hundred and twenty acres of other land did not disqualify him from purchasing the maximum acreage of tide lands as provided in section 4 of the act. But it seems to us the vice of this argument lies in the fact that neither section 3 nor 4 undertakes to define the qualification of a purchaser of state lands. They provide the maximum acreage which may be sold by the board to any one person of the several classes of land, but do not declare to whom it may be sold. They define the rights and powers of the board, but the qualification of a purchaser is found in section 5, which provides, in effect, that he must be over the age of eighteen years, a citizen of the United States or one who has declared his intention to become such, a citizen of this state, and one who has not directly or indirectly made any previous purchase of lands from the state which, together with the lands described in his application, exceed, in case of an application for the purchase of the lands specified in section 3, one hundred and sixty acres if a non-settler, and three hundred and twenty acres if a settler; and, if the application be for the purchase of swamp or tide lands, three hundred and twenty acres. The language of section 5 is clear and unambiguous. It plainly makes any previous purchase of state lands which, together with those described in his application, exceed the maximum acreage, as much of a disqualification as a want of

the requisite age, residence, or citizenship. It seems to have been the intention of the legislature to limit the quantity of land which any one person might purchase from the state under any circumstances to three hundred and twenty acres. This, to our minds, is the only fair construction which can be given to the act, and finds support in the fact that in 1891 the legislature so amended the law that an applicant for the purchase of tide lands is, since that time, only required to swear that he had not made any previous purchase of similar lands, which, together with those described in his application, exceeds three hundred and twenty acres. Under this view, Warren was not a qualified purchaser at the time he made the application to purchase the tide lands in controversy, and therefore the plaintiffs have no standing in a court of equity to proceed against the defendant to have her declared the holder of the legal title subsequently acquired in trust for them on account of any contract or agreement the Board of School Land Commissioners may have been induced to make with Warren by reason of his false affidavit and application. It is true that under the construction thus adopted a nonsettler might, as suggested by counsel, have purchased one hundred and sixty acres of land belonging to the class defined in section 3, and thereafter purchase one hundred and sixty acres of tide land, or three hundred and twenty acres in all, while, if he first purchased one hundred and sixty acres of tide land, he could not thereafter purchase any of the other class. So that the quantity of land which he might lawfully purchase would depend upon the order in which he made his applications,— an incongruity which the legislature recognized and remedied in 1887 : Laws, 1887, p. 73 ; Hill's Ann. Laws, § 3618.

2. The contention is also made that the defendant has

no right to question the regularity of the sale to Warren, or of his qualifications to purchase, as such questions can be raised only by the state in a direct proceeding, or by some one having superior equities to those of the plaintiffs.   There would be much force in this argument if the state had in fact conveyed to Warren the land intended to be purchased by him, prior to the date of the conveyance to defendant.   But he has no title whatever to the premises in controversy.   The plaintiffs are attempting to assert some equity which they claim to be superior to that of the defendant, who is the holder of the legal title by conveyance from the state ; but before they can prevail in such a proceeding they must show that their equities are superior to hers, and this they cannot do, because it appears that Warren was not a qualified purchaser from the state, and therefore had no right to purchase the land at the time he applied for it, nor did he acquire any rights by such application which a court of equity will enforce as against a subsequent purchaser of the legal title.   It follows from these views that the decree of the court below must be affirmed, and it is so ordered.

AFFIRMED.

Decided 5 December, 1898; rehearing denied 3 April, 1899.