## OREGON *v.* CARLSON.

[67 Pac. 576.]

ALIENAGE—FORFEITURE OF TITLE—EFFECT OF NATURALIZATION.

1. Alienage is a disability of an applicant for public lands, generally speaking, but naturalization removes the disability as of the date when the acquisition of title was initiated, and the title cannot thereafter be questioned or set aside on that ground, even by the sovereign.

SUIT BY STATE TO CANCEL DEED—SUBSEQUENT NATURALIZATION.

2. The naturalization of an alien after a suit has been commenced against him by the sovereign to cancel a deed to certain public land that he had obtained by false affidavits does not perfect his title, such a suit being based on fraud rather than on alienage.

TITLE OF PURCHASERS OF PUBLIC LAND—CURATIVE ACT OF 1899.

3. The act of 1899 validating the title to certain tide lands (Laws, 1899, p. 57, § 1), providing that title to all tide lands originally sold, where the purchaser has in good faith paid the purchase price, should be confirmed, without reference to the amount or character of other lands theretofore purchased from the state by such purchaser, was intended to confirm the title of those persons only who had previously purchased from the state the maximum amount in other classes of land, and did not confirm the title of one who had previously obtained tide land from the state by fraud.

CONSTRUCTION OF PUBLIC LAND ACT OF 1899.

4. The title of one who had obtained tide land from the state by fraud was not validated by the public land act of 1899 (Laws, 1899, p. 156, § 9), authorizing the sale of tide lands to citizens of the United States, or to those who have declared their intention to become such, as the statute does not relate to or confirm titles previously granted.

CONSTITUTIONALITY OF PUBLIC LAND ACT OF 1891.

5. The act of 1891, relating to the sale of tide and swamp lands (Laws, 1891, p. 189, § 2), which provides that applicants to purchase tide lands must be citizens of the United States, is not in conflict with Const. Or. Art. I, § 31, providing that white foreign residents of the state shall enjoy the same rights to the possession, enjoyment, and descent of property as native-born citizens, as there is no constitutional right to purchase state lands, and the state may determine the qualifications of purchasers thereof.

From Clatsop: THOMAS A. McBRIDE, Judge.

Suit by the State of Oregon against J. P. Carlson to annul and vacate letters patent to certain state tide lands. From a judgment in favor of the plaintiff, the defendant appeals.

AFFIRMED.

For appellant there was a brief over the name of *J. H. & A. M. Smith,* with an oral argument by *Mr. John H. Smith.*

For the state there was a brief over the names of *Harrison Allen,* District Attorney, and *Fulton Brothers,* with an oral argument by *Mr. Allen* and *Mr. Geo. Clyde Fulton.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

This is an action, under section 358 of the statute (Hill's Ann. Laws), to annul and vacate a deed or letters patent issued by the state to defendant for certain tide lands, on the ground that it was procured by means of a false affidavit. Under the statute in force at the time, only citizens of the United States and of this state were entitled to purchase tide lands, and an intending purchaser was required to file with his application his affidavit that he possessed the requisite qualifications: Laws, 1891, p. 189; *Spencer* v. *Carlson,* 36 Or. 364 (59 Pac. 708). In September, 1895, the defendant, a resident alien, who had declared his intention to become a citizen, desiring to purchase the lands in controversy, made and filed with the application therefor his affidavit, stating, among other things, that he was a citizen of the state and of the United States; and, relying thereon, the state land board issued and delivered to him the deed in question. By his

answer in the action he admits the falsity of the affidavit upon which the purchase was made, but says that it was made by mistake and not for a fraudulent purpose, and that, after the issuance and delivery to him of the deed, and before the commencement of this action, he became a naturalized citizen. Plaintiff had judgment in the court below, and defendant appeals, insisting (1) that his naturalization after the execution and delivery of the deed, and prior to the commencement of this action, took effect by relation, and is a complete bar to this suit; (2) that his title was confirmed by the act of February 17, 1899 (Laws, 1899, p. 57), confirming titles to tide lands and tide flats theretofore sold by the state; (3) that the law authorizing the sale of tide lands was so amended prior to the commencement of this suit as to make an alien who had declared his intention to become a citizen a qualified purchaser, and therefore the materiality of the representations made by the defendant at the time of his purchase was waived; and (4) that the provision of the act under which he purchased, confining the right to purchase to citizens of the United States, was in conflict with the Constitution of Oregon, Art. I, § 31, and therefore void.

1. At common law an alien could not hold title to land as against the king, because an interest in the soil required a permanent allegiance that would be inconsistent with the duty he owed to his own sovereign: 1 Bac. Abr. 201. He could, however, by purchase, acquire a freehold interest therein, of which he could only be deprived by a proceeding for that purpose instituted by the sovereign. But if he became a naturalized citizen before an information was filed for the forfeiture of his land, his title became perfect, and could not be devested by proceedings afterwards instituted: *Harley* v. *State,* 40 Ala. 689; *Osterman* v. *Baldwin,* 73 U. S. (6 Wall.) 116. The same principle has been applied by the land department and the federal courts to entries made under the homestead, preemption, and mining laws of the United States: *Billings* v. *Aspen Min. & Smelt. Co.* 51 Fed. 338 (2 C. C. A. 252); *Billings* v. *Aspen Min. & Smelt. Co.* 52 Fed. 250 (3 C. C. A. 69);

*Bogan* v. *Edenburgh Am. L. Mtg. Co.* 63 Fed. 192 (11 C. C. A. 128) ; *In re Krogstad,* 4 Land Dec. Dep. Int. 564; *Lyman* v. *Elling,* 10 Land Dec. Dep. Int. 474; *Rougeot* v. *Weir,* 13 Land Dec. Dep. Int. 242; *Phillips* v. *Sero,* 14 Land Dec. Dep. Int. 568. Under this doctrine, alienage of the grantee was not a cause for avoiding or setting aside the deed, nor could his title be questioned in a collateral proceeding. It was a mere ground of forfeiture to the state, and, if the alien became a naturalized citizen before proceedings for that purpose were instituted, the reason for the forfeiture ceased to exist; hence no proceedings could be maintained to devest him of his title. The grant to the alien was valid and passed a perfect title, liable only to be forfeited at the suit of the state because of alienage existing at the time the suit to declare the forfeiture was commenced.

2. The case in hand, however, is not an action to declare a forfeiture, but is a direct proceeding under a statute to cancel and set aside a deed obtained by fraud and in violation of law. The right to recover is not based upon the fact that defendant was an alien, but because he did not belong to the class authorized to purchase state lands, and that he obtained the title by a false affidavit. The fact that his alienage differentiated him from the class is a mere incident,—of no more consequence in determining the question than if his disqualification had been caused by some of the other statutory requisites. The sole inquiry is whether at the time of the purchase and the execution and delivery of the deed he belonged to the class authorized to purchase, and whether the state land board was induced to make the conveyance to him by a misrepresentation of existing facts. If, as is admitted, he was not a qualified purchaser at the time, he clearly obtained the title to state lands upon a false affidavit and in violation of law; and, in our opinion, no subsequent act of his can cure the defect therein. His affidavit accomplished the purpose intended, and was the means by which the state was induced to part with its title, and a fraud was thereby committed, whether he was wilfully guilty or not: *Wilson* v. *State,* 47 Ark. 199,

(1 S. W. 71).   It may seem inconsistent for the state to prose-
cute this action, when defendant at its commencement was a
qualified purchaser of tide lands.   We have nothing to do,
however, with the reason which prompted the action, but must
assume that it was brought and is being prosecuted in good
faith, and for the purpose of preserving and enforcing the
rights of the state and its citizens.   We are of the opinion,
therefore, that the subsequent naturalization of the defendant
did not validate his title, or cure the false suggestion upon
which the deed was obtained.

3. It is next contended that defendant's title was confirmed
by the act of February 17, 1899 (Laws, 1899, p. 57), which
provides ''that the titles to all tide lands within this state,
and all tide flats not adjacent to the shore in the waters of the
state, which have been heretofore sold to purchasers by the
State of Oregon—where the purchaser has, in good faith,
actually paid to the state the purchase price, and the same has
been received by the state, and the purchaser has not pur-
chased from the state to exceed 320 acres of that character or
class of land—are hereby confirmed to such and all such pur-
chasers and grantees of the state, without reference to the
amount of any other character of lands purchased by such
purchaser theretofore from the state.''   This act was passed
immediately after the decision in *Warren* v. *De Force*, 34 Or.
168 (55 Pac. 532), holding that, under the act of 1878 (Laws,
1878, p. 41), three hundred and twenty acres was the maximum
acreage of state land that could be sold to any one person.
The proper construction of the statute had theretofore been a
subject of controversy, and purchases of tide land had been
made upon the theory that the number of acres of similar land
previously purchased alone determined the right of the appli-
cant.   It was thought that the decision referred to unsettled
the titles of parties so purchasing, and the act in question was
evidently passed for the purpose of confirming them.   If it
had been the intention of the legislature to confirm the title
to all purchasers of tide lands, whatever the defect, it would
have so provided in plain and simple terms, and not have been

particular to confine the act to purchasers who have "not pur-
chased from the state to exceed three hundred and twenty acres
of that character or class of lands," and to confirm the title
of such purchasers, "without reference to the amount of any
other character of lands."

4. It is next urged that the act of 1899 (Laws, 1899, p. 156),
authorizing the sale of tide lands to citizens of the United
States, or to those who have declared their intention to become
such, rendered immaterial the false representations defendant
made at the time he obtained title to the land in controversy.
But this later act does not refer to, or in any way confirm,
titles previously granted. It simply announces the future
policy of the state as to the qualifications of purchasers of
state lands, and cannot be construed to confirm titles pre-
viously conveyed to persons who under the then existing law
were disqualified from purchasing, or to render immaterial
false representations made by them.

5. And finally it is insisted that the provision of the act
under which defendant's purchase was made, limiting the
right to purchase to citizens of the United States, is in con-
flict with the Constitution of Oregon, Art. I, § 31, providing
that "white foreigners who are or may hereafter become resi-
dents of this state shall enjoy the same rights in respect to the
possession, enjoyment, and descent of property as native-born
citizens." This question was suggested in *Spencer* v. *Carlson,*
36 Or. 364 (59 Pac. 708), and, though not directly discussed
there, the effect of the opinion is to uphold the constitutionality
of the law. We do not understand that by the section of the
constitution quoted the state is denied the right to sell and
dispose of its lands to such persons as it may deem proper.
The right to acquire state lands is not a constitutional one,
nor does the constitution guaranty it to any person. The state
is the absolute owner of the land, and, as proprietor, has the
right to determine for itself the qualifications of purchasers
thereof. The case of *State* v. *Preble,* 18 Nev. 251 (2 Pac. 754),
relied upon by the defendant, was brought under a statute (2
Comp. Laws, Nev. § 3818) authorizing the sale of state lands

to any person upon certain terms and conditions; the sole controversy being whether a subject of the Chinese Empire, who was a *bona fide* resident of the State of Nevada, and had complied with its laws in reference to the sale and disposition of its lands, could be denied by the administrative officers the right to purchase state lands. No question was raised or decided as to whether the state could confer the right to purchase upon a particular class of persons, or upon those possessing some special qualification or status. The case is not, therefore, an authority in point, and suggests no reason why we should depart from the conclusions reached in *Spencer* v. *Carlson,* 36 Or. 364 (59 Pac. 708). The judgment appealed from is therefore affirmed.　　　Affirmed.

Argued 6 February; decided 3 March, 1902; rehearing denied.