Argued 3 November ; decided 17 November, 1902.

## ROBERTSON *v.* STATE LAND BOARD.

[70 Pac. 614.]

42  183
44  351
f44  592
44  597

42  183
f48  263

STATE LAND BOARD—PUBLIC LANDS.

The State Land Board, which is authorized by law to sell the public school lands of the state, to invest the proceeds of such sales, to make rules for the transaction of business, and to decide all disputes between applicants as to priority of right, is a co-ordinate branch of the state government, and its decisions and the exercise of its discretion cannot be controlled by the courts.

From Marion : REUBEN P. BOISE, Judge.

This is a special proceeding instituted by C. H. Robertson against T. T. Geer, as Governor, Charles S. Moore, as Treasurer, and F. I. Dunbar, as Secretary of State, of the State of

Oregon, constituting, by virtue of their respective offices, the State Land Board, to compel them to accept plaintiff's application to purchase certain alleged school land of the State of Oregon and to issue to him a certificate of sale therefor, or to show cause why they had not done so. A petition therefor having been filed, an alternative writ of mandamus was issued, wherein it is alleged, in effect, that plaintiff is beneficially interested in the proceeding; that defendants are the duly elected, qualified, and acting members of said board, and authorized to sell lands belonging to the state; that said state is the owner of the E. ½ of section 16, township 4 S., range 17 E. of the Willamette Meridian; that May 28, 1896, D. W. Huff applied to said board to purchase the S. E. ¼, and October 27, 1897, A. C. Huff, the N. E. ¼ of said section, and there were issued to them certificates of sale thereof, the purchase price to be paid in installments; that each made default in the payment of the sum agreed upon, and more than two years have elapsed since either has made any payment of the principal or interest, in consequence of which their respective rights in or to said land have been forfeited; that on September 7, 1901, plaintiff applied to said board to purchase the east half of said section, depositing the sum of money required for that purpose; that on September 10, 1901, said board, considering his application in regular session, found that said land was included in the certificates issued to D. W. and A. C. Huff, who for more than two years prior thereto had been delinquent in the payment of principal and interest, and ordered the clerk of said board to notify them that, if they failed to pay the sums due within thirty days, their certificates would be canceled; that a rule of the board then in force required that persons delinquent in the payment of the purchase price or interest should be notified and given thirty days in which to pay the sums of money due the state before canceling their certificates or considering the applications of others to purchase any of the lands which the state had agreed to sell; that said board refused to accept plaintiff's application, and has ever since neglected to issue to him a certificate of purchase; and that he possesses the requisite qualifi-

cations to entitle him to the land for which he applied. A demurrer to the alternative writ, on the ground that it did not state facts sufficient to authorize its issuance and that there was a defect of parties, in that neither D. W. nor A. C. Huff were joined as defendants, having been sustained, the proceeding was dismissed and plaintiff appeals.                    AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. William H. Holmes* and *Mr. Webster Holmes.*

For respondents there was a brief over the name of *D. R. N. Blackburn,* Attorney General, with an oral argument by *Mr. Wilson T. Hume.*

MR. CHIEF JUSTICE MOORE, after stating the facts, delivered the opinion of the court.

The question presented by this appeal is whether mandamus will lie to compel the members of the State Land Board to cancel a contract for the sale of state land and to declare a forfeiture of the money paid on account thereof. It is contended by plaintiff's counsel that, the demurrer to the alternative writ having admitted that D. W. and A. C. Huff had been in default more than one year in the payment of the principal and interest, their certificates of sale had become void, and the money paid by them on account of their purchases forfeited, and hence the court erred in sustaining the demurrer, and in not compelling the defendants to perform the mere ministerial duty enjoined upon them by law as a trust resulting from their respective offices. The statute in force at the time these certificates were secured provided, in effect, that the Governor, Secretary of State, and State Treasurer, as a board of commissioners, should sell school lands belonging to the state, not exceeding 160 acres to any one person, not a settler, at a price not less than $2 per acre: Hill's Ann. Laws, § 3598. An applicant for such land, upon paying the board one third of the purchase price and executing two promissory notes for the remainder thereof, payable in one and two years, respectively, with interest at 10 per cent per annum, payable annually, was entitled to receive a certificate that he had purchased the land

therein described, paid a certain sum thereon, executed his promissory notes for the remainder of the purchase price, and that upon the payment of the notes he would be entitled to a deed to the premises: Hill's Ann. Laws, § 3601. Section 3607 of the statute was as follows: ''If any interest should remain unpaid on any note or notes given for part of the purchase price of lands for one year after the same becomes due, the sale and certificate shall be void, and all payments thereon shall be forfeited, and the land shall be deemed vacant, and shall be subject to sale as if it had not before been sold.'' This statute was repealed February 18, 1899, and a new act substituted therefor, which provides, in effect, that the Governor, Secretary of State, and State Treasurer shall constitute a board of commissioners, to be styled the ''State Land Board'': Laws 1899, pp. 156, 157, § 2. Section 6 of the act, so far as deemed material, is as follows: ''The State Land Board may make rules for the transaction of business under this act. They shall meet on the second and fourth Tuesdays of each month to pass upon all matters properly coming before the board for consideration, to hear and decide all questions about priority of settlement and other disputes between applicants; and all their acts and decisions as to the legal title shall be final as to the right to a deed from the state.'' When full payment of the purchase price is made, the purchaser is entitled to receive a deed for the land described in his certificate: Sec. 12. Section 14 of the act is as follows: ''If any installment of the purchase price of lands, principal or interest, should remain unpaid for one year after the same becomes due, the sale and certificate shall be void and all payments thereon shall be forfeited, and the land shall be deemed vacant and shall be subject to sale as if it had not before been sold.'' It will be observed that this section restricts the rights of a purchaser of state land under the statute in force at the time of the sale to the Huffs by rendering the sale and certificate void and all payments thereon forfeited upon the default of one year in the payment of interest after it became due, while as amended it inflicts the same penalties for a default in the payment of the principal, as well as

interest. Whether the sales made and the certificates issued to the Huffs could, in view of the constitutional prohibition against the impairment of contracts (Const. Or. Art. I, § 21), be rendered void and the payments made thereon forfeited by a default of more than one year in the payment of the principal after it becomes due, is not necessary to inquire; for, the allegation in the alternative writ that a default of more than one year had occurred in the payment of the principal and of the accrued interest thereon after they became due having been admitted by the demurrer, the right of forfeiture, if strictly enforceable, is brought within the provisions of both acts upon the question of interest alone.

The action of the court below in dismissing the proceeding was undoubtedly based upon the decision of this court in *Corpe* v. *Brooks,* 8 Or. 222, in which it was held that the board of commissioners for the sale of school and university lands is not an inferior court or tribunal, but a co-ordinate department of the state government, and that their decisions are not subject to review by the courts. Mr. Justice Boise, speaking for the court in deciding the case, says: ''This board is created by the state constitution, and by it invested with the power to dispose of these state lands, and its powers and duties are such as are provided by law. It is composed of the Governor, Secretary of State, and State Treasurer, and is a part of the administrative department of the government, and exercises its powers independent of the judiciary department, and its decisions are not subject to be reversed by the courts. It occupies in this state the same relation to the state judiciary as the land department of the United States does to the United States courts, and their decisions have not been the subject of review by the United States courts. It was held in the case of *Pin* v. *Morris,* 1 Or. 230, that our late territorial courts could not revise the decisions of the surveyor general, and in that case Williams, C. J., says: 'Congress has ordained a land department of the government, whose business it is made to determine those questions which arise out of the disposal of the public lands, and the courts of the country cannot interfere to

regulate or control that business, without introducing uncertainty and confusion into the whole system.' See, also, the case of *Board of Supervisors* v. *Auditor General,* 27 Mich. 165. The board is the land department of this state, and their decision as to who shall receive a patent to land is conclusive on the courts. But the courts may, on a proper showing, decree that the patentee holds the land as the trustee of one having a better right in equity. This board is not in any sense an inferior court or tribunal, over which the circuit courts have a supervisory control, but a co-ordinate department of the state government, whose discretion and decisions the courts cannot control.''

It having been held in that case that the board of commissioners for the sale of school and university lands, now known as the ''State Land Board,'' was analogous to the land department of the general government, an examination of the decisions of the Supreme Court of the United States, in relation to the freedom of the latter from interference by the judicial department, is deemed material. In *McIntire* v. *Wood,* 11 U. S. (7 Cranch) 504, decided in 1813, it was held that the Circuit Court of the United States for the District of Ohio was powerless to compel by mandamus a register of the land office to grant final certificates of purchase to the plaintiff for lands to which he supposed himself entitled under the laws of the United States. In *Gaines* v. *Thompson,* 74 U. S. (7 Wall.) 347, it was held that there could be no difference in principle which forbids interference with the duties of the officers of the land department, whether it arose by writ of mandamus or injunction, and that the act of the Secretary of the Interior and the Commissioner of the General Land Office in canceling an entry for land would not be interfered with by the latter method. In *Craig* v. *Leitensdorfer,* 123 U. S. 189 (8 Sup. Ct. 85), Mr. Justice MATTHEWS, in speaking of the refusal of the courts to interfere with the adjustment of questions affecting the public domain by the officers of the land department of the United States, says: ''The free course of that administration within the limits of the law cannot be interrupted or interfered with by the judicial power. Undoubtedly, private rights of great

value and importance may be involved, and the exercise of executive discretion may require decisions in favor of some and against others in a conflict of interests and claims. But, as all these claims and titles and interests arise under the law which refers their settlement to executive officers, that reference is itself a condition and qualification of the right, and the latter is altogether subject to its consequences. When the department has exercised its discretion and exhausted its function, the legal and equitable effect of what it has done or failed to do may be drawn in question, when necessary to the determination of conflicting rights between private parties, in a judicial proceeding; but as long as the alleged rights which are the subject of contention are in the course of adjudication by the special tribunal, to which they are referred for settlement, the function of that tribunal cannot be displaced by courts of justice.'' In *Corporation* v. *Gibbon,* 158 U. S. 155 (15 Sup. Ct. 779), Mr. Justice BREWER, in speaking of the decisions of the land department of the United States, says: ''The rule is that in the administration of the public lands the decision of the land department upon questions of fact is conclusive, and only questions of law are reviewable in the courts.'' These cases illustrate the principle that the federal courts will not interfere with the officers of the land department, nor adjudicate the legal title to public land until it has passed out of the United States. When a controversy between parties concerning the legal title to land is still pending before the land department of the general government, the courts of this state will not attempt to determine who has a better right to the premises under the provisions of the laws of the United States: *Moore* v. *Fields,* 1 Or. 317; *Frink* v. *Thomas,* 20 Or. 265 (25 Pac. 717, 12 L. R. A. 239).

The conclusion reached by this court in *Corpe* v. *Brooks,* 8 Or. 222, we consider controlling in the case at bar; and, being satisfied that the State Land Board is not an inferior tribunal, but a co-ordinate department of the state government, whose discretion and decision the courts cannot control, the judgment must be affirmed.                                        AFFIRMED.