Argued 5 July, decided 1 August, 1904.

### ROBERTSON *v.* LOW.

[ 77 Pac. 744.]

STATE LAND BOARD — POWER TO WAIVE FORFEITURE.

1. Under the general power to make rules for the conduct of its business and to pass upon matters coming before it for decision, the State Land Board may make and enforce any reasonable regulation tending to promote justice and to simplify its records, as, for example, to waive a strict forfeiture incurred under a statute, and allow a defaulted payment to be made, even against a subsequent applicant : *Miller* v. *Wattier*, 44 Or. 347, explained.

POSITION OF STATE LAND BOARD IN STATE GOVERNMENT.

2. The State Land Board is, and has been for many years, a branch of the executive department of the state government, and its action within the scope of its authority is not subject to review by the judiciary.

From Klamath : HENRY L. BENSON, Judge.

Suit by John P. Robertson against S. B. Low. On November 25, 1884, the board of commissioners for the sale of school and university lands, upon due application, issued to one Joseph Wilson a certificate of sale for 160 acres of school land, described as the southeast quarter of section 24, township 39 south, range 9 east of the Willamette Meridian, in consideration of the sum of $320, of which $108

was paid in cash; the purchaser giving his two promissory notes for the balance in equal parts, payable one and two years from the date thereof, respectively, with interest at the rate of 10 per cent per annum. The certificate was conditioned that, in case any interest on the notes should remain unpaid for one year after the same became due, then that the sale and the certificate should become void, and all payments be forfeited, and that the land should be deemed to be vacant, and subject to sale as if it had not before been sold. The defendant subsequently became the owner and holder of this certificate through mesne assignments from Wilson, and the interest was paid on the notes to November 20, 1899. On July 21, 1902, plaintiff made application to the board to purchase the land, depositing at the same time with the clerk thereof one-fifth of the purchase price, or $64, as required by law; but the defendant, having subsequently made payment of the balance due upon the aforementioned notes, both principal and interest, was on August 1, 1902, awarded a deed upon his certificate. These facts are set out in the complaint, and it is further alleged that, by reason of the delinquency in payment of the interest for more than one year after the same became due and payable, the former payments became forfeited, the certificate was henceforth void, and the land vacant and again subject to sale; that plaintiff duly tendered to defendant the full purchase price of the land, namely, $320; and that the defendant now holds the legal title thereto in trust for plaintiff—and prays a decree accordingly, and that defendant be required to convey to plaintiff. A demurrer to the complaint was sustained, and a decree was rendered dismissing it, from which plaintiff appeals.                                      AFFIRMED.

For appellant there was an oral argument by *Mr. John P. Robertson, in pro. per.*, and by *Mr. Webster Holmes*, with a

brief over the names of *W. H. & Webster Holmes* and *Hiram F. Murdock* to this effect:

I. The contract of sale issued by the state board had, among others, these provisions printed on it, and the board ought now to be bound by its own act:

"Your attention is especially called to the provisions of section 13, of the act of October 18, 1887, which is as follows:

'If any interest should remain unpaid on any note or notes given for part purchase price of lands, for one year after the same becomes due, the sale and certificate shall be void, all payments thereon shall be forfeited, and the land shall be deemed vacant, and shall be subject to sale as if it had not before been sold.'

This law will be strictly enforced, and if you permit the interest on your notes mentioned in this certificate to remain unpaid for one year after it becomes due, this sale and certificate will be cancelled and the lands again offered for sale. It is not the duty of this office to give you any notice of your delinquency in this matter, but it is your duty to keep yourself informed of the condition of your notes and to pay the interest when due."

II. The state board has only those powers prescribed by law (Const. Or. Art. VIII, § 5), and the regulations prescribed under this authority as to the effect of not paying the interest and as to the right of a subsequent applicant are found in Hill's Ann. Laws, § 3607, and B. & C. Comp. § 3304.

III. Time is an essential element in the contract between Wilson and the State: 3 Pomeroy, Eq. Juris. (2 ed.) § 1408; Pomeroy, Contracts, (2 ed.) § 395; Waterman, Spec. Perf. § 465; Fry, Spec. Perf. § 722; *Snider* v. *Lehnherr,* 5 Or. 385; *Gleim* v. *Board of Com'rs,* 16 Or. 479, 482 (19 Pac. 16); *Husbands* v. *Mosier,* 26 Or. 55, 62 (37 Pac. 80); *Miller* v. *Wattier,* 44 Or. 347 (75 Pac. 209); *Kemp* v. *Humphrey,* 13

Ill. 574: *Kimball* v. *Tooke,* 70 Ill. 553; *Scott* v. *Field,* 7 Ohio, 91; *Benedict* v. *Lynch,* 1 Johns. Ch. 370 (7 Am. Dec. 480); *Wells* v. *Smith,* 7 Paige, Ch. 22 (31 Am. Dec. 274); *Prince* v. *Griffin,* 27 Iowa, 514; *Gray* v. *Tubbs,* 43 Cal. 359, 363; *Boreland* v. *Lewis,* 43 Cal. 572; *Stinson* v. *Douseman,* 61 U. S. (20 How.) 466; *Slater* v. *Emerson,* 60 U. S. (19 How.) 238.

When time is of the essence of the contract all rights thereunder become forfeited at the exact time stipulated : *Waterman* v. *Bank,* 144 U. S. 403; *Slater* v. *Emerson,* 60 U. S. (19 How.) 224; *Morgan* v. *Bergen,* 3 Neb. 209, 214; *Drawn* v. *Ingels,* 3 Wash. 424; *Smith* v. *Brown,* 10 Ill. (5 Gilm.) 314; *Prince* v. *Griffin,* 27 Iowa, 514; *Wells* v. *Smith,* 7 Paige, 22 (31 Am. Dec. 274); *Husbands* v. *Mosier,* 26 Or. 55 (37 Pac. 80); *Miller* v. *Wattier,* 44 Or. 347 (75 Pac. 209).

IV. Under Const. Or. Art. I, § 22, providing that the operation of the laws shall not be suspended except by authority of the legislative assembly, the state land board has no authority to waive the forfeiture created by law ; and, further, the powers of officers are strictly construed : *Bancroft* v. *Thayer,* 5 Fed. Cas. No. 835; *Childs* v. *Adams,* 5 Fed. Cas. No. 2,673; *Cunningham* v. *Ashley,* 55 U. S. (14 How.) 388; *Whiteside* v. *United States,* 93 U. S. 257; *Woodward* v. *Campbell Co. Com'rs,* 39 Ark. 580; *State* v. *Lake Shore & M. S. R. Co.* 2 Ohio, 300; *Mayor* v. *Eschbach,* 18 Md. 276; *Mayor* v. *Reynolds,* 20 Md. 1 (83 Am. Dec. 535); *People* v. *Phœnix Bank,* 24 Wend. 429 (35 Am. Dec. 633).

V. An applicant for school land under the statute has a contract with the State to that effect from the time of filing his application, conditioned upon his complying with the law : *McConnaughey* v. *Wiley,* 23 Fed. 452; *Pennoyer* v. *McConnaughey,* 140 U. S. 19; *Wirth* v. *Bronson,* 98 U. S. 118; *Lytle* v. *State,* 50 U. S. (9 How.) 332; *Yosemite Valley Case,* 56 U. S. (15 How.) 77; *Sampson* v. *Smiley,* 80 U. S. (13 Wall.) 91; *Shipley* v. *Cowan,* 91 U. S. 330; *Bison* v. *Curry,* 35 Iowa, 72, 79; *Ives* v. *Ely,* 57 Mich. 573.

VI. When the state land board has deeded land to the wrong person, equity at the suit of the person entitled to the land will decree the board's grantee to be trustee holding the land for the person entitled thereto; and compel the state land board's grantee to convey the land to the person entitled thereto: *Husbands* v. *Mosier*, 26 Or. 55 (37 Pac. 80); *Robertson* v. *State Land Board*, 42 Or. 183 (70 Pac. 614); *Miller* v. *Wattier*, 44 Or. 347 (75 Pac. 209); *Silver* v. *Ladd*, 74 U. S. (7 Wall.) 219, 228; *Meader* v. *Norton*, 78 U. S. (11 Wall.) 442, 457; *Johnson* v. *Towsley*, 80 U. S. (13 Wall.) 85; *Shipley* v. *Cowan*, 91 U. S. 331; *Felix* v. *Patrick*, 145 U. S. 327; *Bernier* v. *Bernier*, 147 U. S. 247; *Turner* v. *Sawyer*, 150 U. S. 586; *Bison* v. *Curry*, 35 Iowa, 78; *Moody* v. *Arthur*, 16 Kan. 428.

The decision of the state land board is conclusive only as to the legal title; a court of equity will look into the proceedings before the board, where property rights are involved: *Cunningham* v. *Ashley*, 55 U. S. (14 How.) 387; *Minnesota* v. *Bachelder*, 68 U. S. (1 Wall.) 109, 115; *Johnson* v. *Towsley*, 80 U. S. (1 Wall.) 85.

For respondent there was an oral argument by *Mr. J. C. Rutenic*, with a brief to this effect:

The appellant states that a deed for this land has been made by the State to respondent, thereby admitting that the state land board has passed on the question of forfeiture, and it is respectfully insisted that such action is final, that board being a coördinate department of the state government: *Robertson* v. *State Land Board*, 42 Or. 183, 188 (70 Pac. 614); *Catholic Bishop* v. *Gibbon*, 148 U. S. 166; *St. Louis S. & R. Co.* v. *Kemp*, 104 U. S. 651; *Heath* v. *Wallace*, 138 U. S. 573; *Barden* v. *Northern Pac. R. Co.* 154 U. S. at p. 327; *Burfenning* v. *Railway Co.* 163 U. S. 321; *Johnson* v. *Drew*, 171 U. S. 93; *Gardner* v. *Bonesteel*, 180 U. S. 362; *De Cambra* v. *Rogers*, 189 U. S. 121.

Mr. Justice Wolverton, after stating the facts in the foregoing terms, delivered the opinion of the court.

1. By Section 3607, Hill's Ann. Laws 1892, in force when Wilson's certificate was issued, it was provided that, "if any interest should remain unpaid on any note or notes given for part of the purchase price of lands for one year after the same becomes due, the sale and certificate shall be void, and all payments thereon shall be forfeited, and the land shall be deemed vacant, and shall be subject to sale as if it had not before been sold." This has been superseded by Section 3307, B. &. C. Comp., which provides that, if any installment of the purchase price or interest shall remain unpaid for one year after the same becomes due, the certificates shall be void, etc.; running otherwise the same as the section amended. The board was empowered by Section 3608, Hill's Ann. Laws 1892, and is still empowered, under the provisions of Section 3299, B. & C. Comp., to make rules for the transaction of business within the scope of the act of which the foregoing sections were and are a part, to pass upon all matters properly coming before it for consideration, to hear and decide all questions about priority of settlement and other disputes between applicants; and all their acts and decisions as to the legal title are to be final, as to the right of a deed from the State. This court has virtually decided in *Robertson* v. *State Land Board*, 42 Or. 183 (70 Pac. 614), and quite properly, we think, after a reëxamination of the matter, that the authority thus conferred upon the board was ample to empower it to make a rule that persons delinquent in the payment of their purchase price and interest should be notified, and given 30 days in which to bring up such payments before cancellation of their certificates would be made, and that applications of others for the purchase of the land involved meanwhile would not be considered. Such a rule is mani-

festly reasonable and just, and well calculated to promote a systematic regulation, adjustment, and disposition of the business intrusted to the board.

It is very true that the legislature has made time of the essence of the contract, and, further than this, the board, by the very terms of the certificate issued to Wilson, which eventually came into the hands of the defendant, made time of the essence thereof also, by express stipulation, following the mandate of the law. But the same law has empowered it to make rules for the government and adjustment of its business, comprising among other matters the sale of school land, and to hear and decide all questions as to the priority and other disputes between applicants, involving as well the authority to determine as to who is entitled to the legal title, and consequently the deed from the State ; and these statutes must be read *in pari materia.* It is also true, as a legal proposition, that a technical forfeiture was incurred under the provisions of the law, and the certificate of sale by the nonpayment of interest for more than one year, and is now incurred under the present statute for the nonpayment of either principal or interest for more than one year after the same becomes due and payable, and takes place *ipso facto* upon the happening of the event, and that no judicial declaration thereof is necessary to determine the fact. It was and is a legislative declaration, and takes effect upon the happening of the event ; and the land is to be deemed vacant and subject to sale, as if it had not before been sold : *Miller* v. *Wattier,* 44 Or. 347 (75 Pac. 209). In further support of the principle, see *State* v. *Emmert,* 19 Kan. 546; *Ewing* v. *Baldwin,* 24 Kan. 82; *Baker* v. *Newland,* 25 Kan. 25; *Reynolds* v. *Reynolds,* 30 Kan. 91 (1 Pac. 388); *Conklin* v. *Hawthorn,* 29 Wis. 476.

We said in the Miller Case that "it [the forfeiture] took place *ipso facto* upon the nonobservance of the conditions

44 OR.——38

of the sale, and the purchaser at once lost all right or interest therein." We should have added, to be more exact, "that he was entitled to enforce." But, notwithstanding such legislative declaration, the State can undoubtedly, as against all persons not having acquired a vested right or interest, waive or relieve against the forfeiture, which is just what it did do by legislative act in the Miller Case. It stands in a like relation as an individual contracting with another, where time is made of the essence of the contract, and a forfeiture has been incurred. The party entitled to the benefits of such conditions, and to insist upon the forfeiture as an absolute termination of contractual relations, may nevertheless waive it by accepting the overdue payment or payments, or extending the time in which to meet them; thus restoring the party in default to his former relationship, entitling him still to the rights thereby bargained and stipulated for. The board is the State's instrumentality for the sale and disposition of school lands. Although constituted a part of the administrative department of the government under the constitution, it is nevertheless governed and controlled in the exercise of its functions by the legislature and the laws emanating therefrom; and the cardinal and pivotal controversy here is whether it is so authorized and empowered to waive or forego in any event, and, if so, under what conditions, a technical forfeiture on the part of the purchaser, so as to entitle or permit him to complete the purchase notwithstanding his default. We are clearly of the opinion that the power accorded to make rules for the transaction of its business, and to hear and determine disputes between applicants touching priority of settlement, and to decide between them finally as to the legal title, and as to who is entitled to a deed from the State, carries with it, by fair and reasonable intendment, such requisite authority. The power is manifestly of considerable proportions, and de-

signed to cover a multitude of details, as well as to afford
adequate administrative discretion for the regular, orderly,
and equitable adjustment of its business with purchasers.
It is not fair to suppose that a purchaser has suffered both
legislative and contractual default but for a day, and for a
very small sum, under such circumstances that it would
be atrociously inequitable to insist upon the forfeiture.
Would any one say in such a case that the party must lose
his land, notwithstanding the board has permitted him to
make payment, and has executed to him a deed therefor,
when no adverse rights have intervened?  Doubtless many
state deeds have been executed under similar or even much
less excusable circumstances, and it would probably un-
settle many titles if the board was absolutely without au-
thority to act in any case to reinstate the purchaser where
a forfeiture has thus been incurred.  It is highly appro-
priate, therefore, that the board should take some definite
step to indicate finally the State's determination not to rec-
ognize contractual relations further, and thereby to cancel
its obligations to sell.  This the law says, by the plainest
intendment, it may do by rule; and the rule becomes a
law unto all applicants, just as binding as a legislative
edict, and no one can gain a vested right in the face of it.
It is not left in the province of the board to act arbitrarily
in such matters, and to deny one applicant and prefer
another as its peculiar predilections may suggest; but it
must act under the law, and by reasonable rule made for
the transaction and regular adjustment of its business in
dealing with the purchaser.  When it has done this, no
one can complain, as all are fully advised beforehand of
their absolute rights and remedies in the premises, and
are required to act accordingly.  Such seems to have been
the equitable policy of the board, and we are not disposed
to disturb its just interpretation of the law, and its conse-
quent action in that regard.

2. In a case of similar import to this (*Baker* v. *Newland*, 25 Kan. 25), Mr. Justice BREWER, now of the Supreme Court of the United States, makes use of the following significant language: "It is generally true that one in whose favor a forfeiture exists may waive it. The State was the party entitled to the benefit of this forfeiture. No one else could claim its benefits. If, notwithstanding, it receives full payment of the purchase price and gives a patent, it does not lie in the power of any individual to question that title. Doubtless many instances will be found in the history of this State in which purchasers of school lands have failed to make their payments on the very day. Technically and strictly, such failure worked a forfeiture. But if, notwithstanding, thereafter such purchasers completed their payments and received patents, we suppose that their title is safe—certainly as against any one but the State, and probably as against it. It may be said that no officer is in terms authorized to waive such a forfeiture, or to relinquish any legal claims of the State. No officer can act outside the law, and bind the State. Doubtless this is true. But where the just and equitable claims of the State are fully satisfied, the acts of its officers in waiving mere technical and arbitrary forfeitures, and which are never challenged by the State itself, will be upheld as against the complaints of any third party." But we have no need to go so far in the present case, as the board possesses much more ample authority in the premises than any officer would seem to possess under the laws of Kansas. Now, it appears from the complaint that the board, within a few days after the plaintiff made his application to purchase, executed to defendant a deed, in pursuance of his certificate, to the land in dispute, thus deciding and determining the matter before it between the claimants as to who was entitled to the legal title; and we must assume, without a showing to the contrary, that it acted in pursuance of law

and its rules regularly adopted, and must therefore hold that its adjustment of the matter is a finality between the parties: *Robertson* v. *State Land Board*, 42 Or. 183 (70 Pac. 614). There is no allegation in the complaint, nor any fact relied on, tending in any manner to show that the board acted fraudulently or arbitrarily in the premises; the sole reliance of the plaintiff for relief being that it exceeded its lawful authority in executing the deed to defendant, and thus denying plaintiff's application. On this contention, he has not stated a cause of action, and the demurrer was properly sustained.

The judgment of the trial court will therefore be affirmed, and it is so ordered.        AFFIRMED.

---

Decided 16 May, rehearing denied 5 July, 1904.