DE LAITTRE et al. v. BOARD OF COM'RS.

(Circuit Court, D. Oregon. January 14, 1907.)

No. 3,104.

1. STATES—PROCEEDINGS AGAINST STATE OFFICERS—PUBLIC LANDS OF STATE—PATENTS.

No affirmative relief can be had against the state or any officer thereof, whereby the state or such officer could be required or compelled to execute deeds or issue patents for state land, or to perform any act in connection therewith requisite to complete the title to the land; but the state's board of land commissioners may be restrained from doing acts in violation of the contractual relations existing between it or the state and the purchaser.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 44, States, §§ 182, 186.]

2. PUBLIC LANDS—SCHOOL AND UNIVERSITY LANDS—DISPOSAL BY STATE—LAND COMMISSIONERS—DECISIONS—REVIEW.

Const. Or. art. 8, § 5, provides that the Governor, Secretary of State, and State Treasurer shall constitute a board of commissioners for the sale of school and university lands and for the investment of the funds arising therefrom, and their powers and duties shall be such as may be prescribed by law. Held, that such board was the state's instrument for the sale and disposition of state school lands, and its decisions with reference to who should be entitled to a patent prior to the issuance thereof were not subject to review by the courts.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 41, Public Lands, § 167.]

**3.** SAME—FRAUD—JURISDICTION OF BOARD.

B. & C. Comp. Or. §§ 3299, 3300, 3302, 3304, 3306, 3308, 3309, authorize the state land board to make rules for the transaction of its business, and to decide all questions of priority of settlement, etc., and other disputes between applicants for the purchase of school lands, and all its acts and decisions as to the legal title shall be final as to the right to a deed from the state. A person 18 years of age who is a citizen, or has declared his intention to become such, is entitled to buy not more than 320 acres of any one kind of land, based on an application and affidavit, including, among other things, a declaration that the proposed purchase is for his own benefit, and not for speculation, and that he has made no contract or agreement for the sale or disposition of the lands, etc. *Held* that, prior to the issuance of a deed by the state, the board, on receiving information that an application was fraudulent, had power, notwithstanding the receipt of a portion of the purchase price, to institute a hearing on notice, and on proof of the fraud to decline to issue a deed.

**4.** SAME—BONA FIDE PURCHASER—RIGHTS.

Where a certificate for the purchase of state school lands was obtained by fraud, the assignment thereof to a purchaser who was innocent of fraud only conferred on him the rights of his assignor, and did not entitle him to a deed from the state, notwithstanding the fraud.

[Ed. Note.—Bona fide purchasers, see United States v. Detroit Timber & Lumber Co., 67 C. C. A. 13.]

## On Demurrer to Complaint.

On October 26, 1900, an application to purchase the east ½ of section 36, township 24 S., range 24 E., of the Willamette Meridian, accompanied by an affidavit, both purporting to have been signed by one George P. Cook, and the latter to have been verified before H. H. Turner, a notary public, was filed with the clerk of the board of commissioners for the sale of school and university lands, and for the investment of the funds arising therefrom, of the state of Oregon, whereupon, 20 per cent. of the purchase price having been paid, a certificate of sale, numbered 10,159, was issued to Cook, and delivered to Alfred T. Kelliher, it being supposed that he was the assignee from Cook. On December 17, 1900, Kelliher, for the consideration of $320, assigned to complainants, John De Laittre and Samuel S. Johnson, of Minneapolis, Minn., who subsequently made payment to the board of two additional installments of $80 each of principal, and of all interest to October 26, 1904, leaving $160, or two-fifths of the purchase price, yet unpaid. On May 10, 1905, the board of commissioners, through its clerk, notified complainants that it had information that their certificate of sale had been issued upon a fraudulent application, and directed that they show cause why the same should not be canceled, and fixed a day for hearing. Complainants appeared at the time appointed, and, evidence being submitted and a hearing had, the board found that the application, along with many others, was forged and fraudulent, and it was therefore ordered that such certificate be canceled and held for naught. No offer of repayment of installments advanced was made prior to cancellation, and the board now refuses to issue a deed upon the certificate, although the balance due of the purchase price, with accrued interest, has been regularly tendered. Reciting these facts in form to show the transactions fully, complainants now seek by their bill in equity to have the order of the board of commissioners annulled, their certificate of sale reinstated, and a further decree requiring such board to issue to them the deed of the state for the land involved. The sufficiency of the bill of complaint is challenged by demurrer.

E. B. Watson, B. B. Beekman, and William Furst, for complainants.

A. M. Crawford, Atty. Gen., for respondent.

WOLVERTON, District Judge (after stating the facts). This suit is instituted upon one of many certificates of sale, issued under similar

circumstances and conditions, to test the legality of the acts of the board of commissioners in canceling the certificates and refusing to execute deeds in pursuance thereof. The case, like that of Pennoyer v. McConnaughy, 140 U. S. 1, 11 Sup. Ct. 699, 35 L. Ed. 363, is not nominally against the Governor, Secretary, and Treasurer as such officers, but against them collectively as the board of commissioners. It is the doctrine of that case, supported by others that have preceded it in the same court, that no affirmative relief can be had against the state, or any officer thereof, whereby it or he could be required or compelled to execute deeds or issue patents for the land claimed, or to perform any acts in connection therewith requisite to complete the title to such land; but that the board might be restrained from doing acts in violation of the contractual relations existing between it or the state and the purchaser. This is perfectly manifest from the discrimination that the eminent jurist who announced the opinion of the court makes of the cases reviewed. He refers to the case of Cunningham v. Macon & Brunswick R. R., 109 U. S. 446, 3 Sup. Ct. 292, 609, 27 L. Ed. 992, where it was said, referring to the case of Davis v. Gray, 16 Wall. 203, 21 L. Ed. 447:

"*Nor was there in that case any affirmative relief* granted by ordering the Governor and land commissioner *to perform any act towards perfecting the title of the company.*"

And again he says:

"The same distinction was pointed out in Hagood v. Southern, 117 U. S. 52, 6 Sup. Ct. 608, 29 L. Ed. 805, which was held to be, in effect, a suit against the state, and it was said: 'A broad line of demarcation separates from such cases as the present, in which the decrees require, *by affirmative official action* on the part of the defendants, *the performance of an obligation which belongs to the state in its political capacity,* those in which actions at law or suits in equity are maintained against defendants, who, while claiming to act as officers of the state, violate and invade the personal and property rights of the plaintiffs, under color of authority, unconstitutional and void.'"

The italicization in the excerpts is the work of the writer of that opinion. And further, the following is also quoted from Hans v. Louisiana, 134 U. S. 1, 20, 21, 10 Sup. Ct. 504, 509, 33 L. Ed. 842:

"To avoid misapprehension, it may be proper to add that, although the obligations of a state rest for their performance upon its honor and good faith, and cannot be made the subjects of judicial cognizance unless the state consents to be sued or comes itself into court, yet where property or rights are enjoyed under a grant or contract made by a state, they cannot wantonly be invaded. Whilst the state cannot be compelled by suit to perform its contracts, any attempt on its part to violate property or rights acquired under its contract may be judicially resisted, and any law impairing the obligation of contracts under which such property or rights are held is void, and powerless to affect their enjoyment."

So that, in pursuance of the doctrine thus obtaining in the Supreme Court of the United States, I am bound to dismiss from further consideration all relief demanded that is affirmative in its nature, or which requires of the board of commissioners any specific acts looking to the receipt and acceptance of the balance of the purchase price tendered, or to the execution of the deed or patent to the land involved, and its delivery to the complainants. Those would be the acts of the board

in its official capacity, or of the state, and the court could not, as against the state, compel their performance.

There remains, therefore, the consideration of the one question whether the board should be restrained from disposing of the land to any other person, in violation of its undertaking by the certificate of sale issued in the name of Cook, and delivered to Kelliher.

The Constitution of the state of Oregon (article 8, § 5) provides that:

"The Governor, Secretary of State, and State Treasurer shall constitute a board of commissioners for the sale of school and university lands, and for the investment of the funds arising therefrom, and their powers and duties shall be such as may be prescribed by law."

In pursuance of this provision, it was held, as early as 1880, by the Supreme Court of the state (Corpe v. Brooks, 8 Or. 222), Mr. Justice Boise, a member of the constitutional convention, announcing the opinion, that:

"This board was created by the state Constitution, and by it invested with the power to dispose of these state lands, and its powers and duties are such as are provided by law. It is composed of the Governor, Secretary of State, and State Treasurer, and is a part of the administrative department of the Government, and exercises its powers independent of the judiciary department, and its decisions are not subject to be reversed by the court. It occupies in this state the same relation to the state judiciary as the land department of the United States does to the United States courts, and their decisions have not been the subject of review by the United States courts. * * * The board is the land department of this state, and their decisions as to who shall receive a patent to land is conclusive on the courts."

This view has been consistently adhered to ever since. See Robertson v. State Land Board, 42 Or. 183, 70 Pac. 614, Miller v. Wattier, 44 Or. 347, 75 Pac. 209, and Robertson v. Low, 44 Or. 587, 77 Pac. 744. In this last case the court said:

"The board is the state's instrumentality for the sale and disposition of school lands. Although constituted a part of the administrative department of the government under the Constitution, it is nevertheless governed and controlled in the exercise of its functions by the Legislature and the laws emanating therefrom."

Counsel for plaintiffs concede that the land department of the state occupies a position, as it relates to the state judiciary, analogous to that which obtains between the land department of the United States and the courts thereof. In neither jurisdiction will the courts intervene, while the controversy is pending in the land department for decision, and prior to patent, to control the discretionary or judicial action, or such as the latter department is wont to exercise. It is, however, strenuously urged that the board of commissioners occupies a position identical with that which the registers and receivers of the federal land department occupied prior to the act of Congress of 1836, permitting an appeal to the Commissioner of the General Land Office, and thence to the Secretary of the Interior, for review or revision of their acts in passing upon the qualifications of purchasers; and that, when once the board has granted a certificate of sale, it is thenceforth precluded from looking back of it, no matter what fraud has been committed by the applicant in the acquirement of

the certificate, or in what manner the board has been imposed upon whereby its issuance has been induced. And it is further asserted that the board, occupying the position of an inferior officer without revisory powers, is entirely precluded by whatsoever it does with reference to the disposal of the school lands of the state, and under no conditions can it undo what it has done in relation thereto, or correct any step that it has taken if found in error, or that it has been misled or imposed upon. This presents the principal question for consideration. It may be premised (and to this there can be no dissent) that the functions of the land department of the state, like those of the same department of the federal government, are administrative in character, and that the functionaries exercise quasi judicial powers also, and that their acts in the latter capacity, when within the authority of the law, are as binding upon every other tribunal as the adjudications of regularly constituted courts of justice. These principles are so well established that they have become fundamental, and need no citation of authority in their support.

Now, as to counsel's contention. The case of Orchard v. Alexander, 157 U. S. 372, 15 Sup. Ct. 635, 39 L. Ed. 737, is relied upon in its support. That case goes no further, however, than to indicate that, if the law stood as it did prior to the act of Congress of 1836, support would be found in the decisions of that court for the position advanced at the hearing that, inasmuch as no special right of appeal or review is given, the decisions of the registers and receivers upon matters referred to them by law for determination are not subject to reexamination by the Commissioner of the General Land Office or the Secretary of the Interior, but are final adjudications as to those matters. In confirmation of that view, the court quoted from Lytle v. Arkansas, 9 How. 314, 333, 13 L. Ed. 153, as follows:

"The register and receiver were constituted by the act a tribunal to determine the rights of those who claimed pre-emptions under it. From their decision no appeal was given. If, therefore, they acted within their powers, as sanctioned by the commissioner, and within the law, and the decision cannot be impeached on the ground of fraud or unfairness, it must be considered final."

And further referred to the case of Wilcox v. Jackson, 13 Pet. 498, 511, 10 L. Ed. 264, wherein it is said:

"That the acts of Congress have given to the registers and receivers of the land offices the power of deciding upon claims to the right of pre-emption; that upon these questions they act judicially; that, no appeal having been given from their decision, it follows as a consequence that it is conclusive and irreversible. This proposition is true in relation to every tribunal acting judicially, whilst acting within the sphere of their jurisdiction, where no appellate tribunal is created; and even when there is such an appellate power, the judgment is conclusive when it only comes collaterally into question, so long as it is unreversed."

It will be seen that neither of these cases went further than to hold that neither the Commissioner of the General Land Office nor the Secretary of the Interior possessed revisory authority over the adjudications of the register and receiver, and that no appeal or other review lay from the decisions of the latter to the consideration or reexamination of the former. Those cases did not go so far as to hold, or to intimate even, that the register and receiver might not have

revised their own findings, where induced through fraud or imposition, while yet the matter had not passed beyond their control.

In Parsons v. Venzke, 164 U. S. 89, 17 Sup. Ct. 27, 41 L. Ed. 360, a more recent case, a pre-emption entry was made upon public land, and the final receipt of the register and receiver was issued to the entryman. Subsequently a special agent of the Land Department reported to the commissioner that the entry had been fraudulently and unlawfully made; whereupon, upon notice to the entryman, an investigation was had before the local land officers, and carried in due course to the Secretary of the Interior, which resulted in the cancellation of the entry, on the ground taken by the special agent. It will now be observed that there was no appeal from the judgment of the register and receiver in issuing the final receipt; but, proceeding independently of that, on the ground of fraud, the Land Department procured the cancellation of the receipt, thus nullifying the first judgment of the local officers. In that case it was contended that neither the Commissioner of the General Land Office nor the Secretary of the Interior possessed the power to cancel or set aside the entry after the local officers had approved the evidence offered of settlement and improvement, and issued the final receipt. But it was held, on the authority of the case of Orchard v. Alexander, supra, that the action of local land officers on charges of fraud in the final proof does not conclude the government, as the General Land Office has jurisdiction to supervise such action, or correct any wrongs done in the entry, but that such jurisdiction is not arbitrary or unlimited, and is not to be exercised without appropriate notice to the parties concerned. Now the state land department has no inferior officers authorized to pass upon the qualifications of applicants, or to determine their rights to purchase under the law for the administration of the sale of school lands. All these powers and functions are exercised directly by the board of commissioners itself. Hence, there is no need of its possessing any revisory power over inferior officers. The board, therefore, constituting the whole of the administrative department for the sale of these lands, must perform all the functions pertaining thereto, and until the matters of which it takes cognizance under the law are finally concluded, it retains jurisdiction, for some purposes, at least; and it remains to be seen whether that jurisdiction extends to relieving its acts and judgments of any fraud or deception by which they were induced, or to correct wrongs that might have been imposed upon it. As it relates to the sale of school lands, the statute of the state has provided that the state land board may make rules for the transaction of business; that it shall meet to pass upon all matters properly coming before the board for consideration, to hear and decide all questions about priority of settlement and other disputes between applicants, and that all its acts and decisions as to the legal title shall be final as to the right to a deed from the state; that no more than 320 acres of any one kind of land shall be sold to one person; that any person over 18 years of age, who is a citizen of the United States or has declared his intention to become such, is entitled to purchase any of the lands of the state, and, if desiring to purchase, shall file with the state land board an application containing a precise description of the lands in

view, which shall be accompanied by the affidavit of the applicant to the effect that he is over 18 years of age and a citizen of the United States, or has declared his intention to become such; that the proposed purchase is for his own benefit, and not for the purpose of speculation; that he has made no contract or agreement, express or implied, for the sale or disposition of such lands, and that there is no valid adverse claim thereto; that payment may be made by installments, at the election of the purchaser, and that, if he so elects, the board is required, upon receipt of one-fifth of the purchase price, to deliver to him a certificate that he has purchased the lands therein described, has paid a certain sum therefor, and has undertaken to make certain other payments, specifying the amounts, time of payment, etc., and that, upon making full payment, as required, he, or his heirs or assigns, shall be entitled to a deed for the lands therein described; that duplicates of the certificates of sale so issued shall be preserved in a bound volume; that all assignments of certificates of sale shall be executed and acknowledged in the same manner as a deed to real estate, and the assignee, upon full payment of the amount due of the purchase price, and delivery to such board of the certificate and assignment, shall receive a deed for the lands described in his own name, as if he were the original purchaser. Sections 3299, 3300, 3302, 3304, 3306, 3308, and 3309, B & C. Comp.

Being bound to the observance of the law, the board is inhibited from selling to any but qualified purchasers. It cannot sell to an alien. Spencer v. Carlson, 36 Or. 364, 59 Pac. 708. Nor can it sell more than 320 acres of land to any one person. Warren v. De Force, 34 Or. 168, 55 Pac. 532. Nor, for like reasons, upon which these authorities proceed, could it sell to a person under the age of 18 years, or to any one for the benefit of another, or for the purpose of speculation. Every individual contemplating a purchase of school lands is as much bound by the law as is the board itself, and it follows as a corollary that none can obtain any valid rights with respect to such lands in violation or in defiance of the law. It is quite true that an applicant, when he has paid the requisite installment and obtained his certificate of sale from the board, acquires what is appropriately styled a "vested right" to the land involved; but that right is grounded upon the condition that he has proceeded fairly, and not fraudulently or in defiance of the law, as no valid right can be founded upon the fraud of the party seeking its sanction, unless by lawful consent or ratification of the other party to the contract. The certificate of sale is not the final act of the board in the consummation of the sale. The law prescribes that the board shall execute a deed upon the payment of the balance of the purchase price; therefore, the sale is not completed, nor the title vested in the purchaser, until such deed is executed and delivered, or such acts have been performed as are the equivalent of delivery. Shively v. Pennoyer, 27 Or. 33, 39 Pac. 396. Nor is the case of Gliem v. Board of Commissioners, 16 Or. 479, 19 Pac. 16, opposed to this view. In the meanwhile, the legal title remains in the state, and the purchaser has the equitable title only. The administrative functions of the board do not cease, and its jurisdiction

and duty to see that the title vests lawfully, or, in other words, that it is not obtained contrary to law, still remain. If it be said that the board acts quasi judicially in determining the qualifications of the purchaser, in granting the certificate, it does not lose jurisdiction of the cause by what is then done, as do the registers and receivers under the federal system. But, being intrusted with the entire administration of the sale of the state's public lands, it retains jurisdiction of the subject-matter, as does the Land Department of the general government, until the sale is finally consummated by a full compliance with the prerequisites for obtaining title, and the patent has issued. Now, such being the functions of the board, why may it not institute proceedings before itself, upon giving proper notice to the purchaser, as did the Commissioner of the General Land Office before the register and receiver in the case of Parsons v. Venzke, supra, to determine whether or not the applicant has procured his certificate fraudulently; and, if it be found that he has, then why may it not go further, and cancel the certificate? It seems only natural that it could do all this, and solely by virtue of its authority to administer the land department or the sale of the public lands of the state. The power is deducible otherwise, I think, from the authority to hear and determine all questions about priority of settlement or other disputes between applicants, and the provision that all its acts and decisions as to the legal title shall be final as to the right of a deed from the state. Scarcely greater powers are conferred upon the Secretary of the Interior under the acts of Congress, and yet it has been firmly settled that the federal Land Department is fully authorized to inquire, at any time before patent is issued, whether the original entry is in conformity with the act of Congress, and, if not, to cancel it. Cornelius v. Kessel, 128 U. S. 455, 9 Sup. Ct. 122, 32 L. Ed. 482; Knight v. U. S. Land Association, 142 U. S. 161, 12 Sup. Ct. 258, 35 L. Ed. 974; Michigan Land & Lumber Co. v. Rust, 168 U. S. 589, 18 Sup. Ct. 208, 42 L. Ed. 591; Hawley v. Diller, 178 U. S. 476, 20 Sup. Ct. 986, 44 L. Ed. 1157; and American Mortgage Co. v. Hopper, 64 Fed. 553, 12 C. C. A. 293.

Suppose another person, being qualified, had made application for the land in dispute, and thereby controverted the right of the plaintiffs to a deed. This would have brought on a contest, and the board would clearly have had the authority to determine, as between the contestants, who was entitled to the deed. If, therefore, it has this power to determine as between contesting parties, it has also the power to determine whether the applicant is entitled to a deed when fraud is otherwise charged against him, for the protection of the state in the disposition of its public lands. The board must do right toward the state as well as toward the purchaser, and it could not serve the state properly by executing a deed upon a fraudulent application, when it has come into the knowledge of the fact. And if it did not possess power to cancel the certificate, yet it would be grossly derelict in duty if it, notwithstanding the fraud practiced upon it, proceeded to vest title in pursuance of such an application. I am firmly of the opinion, however, that it possesses the power to cancel, and to place the land again upon

the market for a resale. The certificate, in a sense, evidences a contract between the board or the state and the applicant. But it is a contract made with reference to the law regulating the sale of school lands, and, in view of the authority of the board to properly administer the sale of such lands, and to see that right is done to both the purchaser and the state, to the state as well as to the purchaser. Ordinarily, the state or the general government would, I presume, like an individual, be required to tender back the purchase price upon rescission of the contract of sale before it could insist upon a cancellation; but the present is not a case of that kind. The contract is not as if it were made between private individuals, where, if a fraud is committed by one party or the other, it does not usually render the contract void, but voidable only, and subject yet to adoption as a valid agreement. The board, of course, can do nothing except as the law has prescribed, and, if it has been imposed upon by a fraudulent application, it cannot, notwithstanding, issue the deed contrary to law. Nor is it made conditional upon its withholding the deed that it return the portion of the purchase price advanced. Certainly the board cannot circumvent the law by refusing to refund the payments advanced, and thereby ratify an unlawful purchase. Neither can the fraudulent purchaser require the repayment of such money as a condition precedent to the withholding of the deed. Nor was it intended that the board should be driven to a resort to the courts to rid itself of the fraud, or should be required to observe all the conditions incident to private contractual relations before it can be entitled to relief; but it may, by the exercise of the functions afforded it under the Constitution and the law, determine the matter for itself, either when presented through contest between applicants, or by proceeding inaugurated in its own behalf. Knight v. U. S. Land Association, supra.

I have not examined the statute relative to the authority of the board to employ funds that have gone into the hands of the State Treasurer for the purpose of making a tender back of purchase money paid in such cases, and hence do not pass upon the question; deeming it unnecessary to a decision of the present controversy. If the board possessed such authority, it was not necessary that it exercise it as a prerequisite to its authority to cancel the certificate. If it has not such authority, the matter may appropriately be referred to the Legislature. I am impressed that equitably such portion of the purchase price as has been paid to the board should be repaid to the plaintiffs, as they evidently purchased the certificate from Kelliher without knowledge of the forgery attending the application. That circumstance, however, does not constitute them innocent purchasers for value.

This leaves one question yet to determine, and that is whether plaintiffs are innocent purchasers for value of the certificate of sale, so as to relieve them of the consequences of the fraud inducing and attending its issuance. The law permits an assignment of the certificate, and prescribes how it shall be done, but does not constitute the purchaser an innocent holder for value. The certificate lacks the qualities of negotiable paper, and therefore passes like any other contract by

assignment; the assignee stepping into the shoes of the assignor, and occupying his position, with no greater protection or rights. Neither is the assignee of the certificate a purchaser of the legal title to the land; that remains in the state. He is simply a purchaser of the contract, which transfers to him the equitable title that his assignor held before him by virtue of the same contract. While dealing with reference to the equitable title, the purchaser thereof cannot become, unless in exceptional cases, an innocent purchaser of the legal title. That remains outstanding, and he must look through his purchased and assigned contract for the acquirement thereof. If, therefore, such contract is tainted with fraud, he takes charged with the infirmity, the same as his predecessor was charged with it before him, and must abide the consequences. Hawley v. Diller, supra, American Mortgage Co. v. Hopper, supra, and Taylor v. Weston, 77 Cal. 534, 20 Pac. 62. Neither does the assignment make of the contract a different one than when first entered into. It remains the same, and the contractual relations continue the same.

These considerations require that the demurrer to the bill of complaint be sustained, and it is so ordered, and the bill will be dismissed.